CITY OF GROESBECK v. W. C. PINSON.

Decided March 11, 1899.

**Master and Servant—Independent Contractor.**

One who contracts with a city to excavate a reservoir and do the preliminary work, using his own men, teams, and material, and adopting his own method of doing the work, without interference or the right to interfere on the part of the city, is an independent contractor, for whose negligence the city is not responsible, although his compensation is fixed at a specified sum per day and his expenses.

APPEAL from Limestone. Tried below before Hon. L. B. COBB.

*Doyle & Bradley* and *J. E. Bradley,* for appellant.

*Kimble Bros. & Blackman,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was instituted in the District Court of Limestone County, Texas, to recover damages for injuries alleged to have been negligently inflicted upon the plaintiff by the defendant, and charging the negligence to consist in the use of a defective doubletree so used by defendant, or J. H. Whittington, its agent and vice-principal, while engaged to work on certain excavations and other work connected with enlarging the reservoir of the waterworks of defendant, and further charging said doubletree was insufficient and defective and entirely unfit for the use to which it was put; and further, that the singletrees so used were attached to the doubletree by what are known as clips, one clip on each end of the doubletree; that the doubletree was attached to the end of a rope which had its other end attached to the top of a tree which they were engaged in removing from said excavation; that when the rope was tied to or near the top of the tree and the horses hitched thereto and made to pull, it was found that the harness would rise up and be pulled too high for the team to do good service, and that it was necessary for some of the hands to get upon the rope to weight it down and that by this means the trees could be pulled over. That Whittington, acting in the capacity of agent of defendant, ordered plaintiff to get upon said rope as above stated, when said clip came off the doubletree and cause the injuries of which complaint is made.

Defendant answered by a general denial, and further, that it was desirous of having its reservoir for its waterworks enlarged, and for that purpose it contracted with J. H. Whittington to make a certain excavation and furnish all teams, tools, hands, and all other appliances of whatsoever kind needed for the purpose, and to do the entire job of work complete, including the removal of all trees, dirt, rock, and everything else in the way; that under said contract defendant relinquished to Whittington and he assumed and exercised the selection of all hands, teams, tools, etc., and the management and control of the manner of doing said job of work, all of which was left entirely to him; that he undertook said job of work according to said contract and selected and hired all hands, teams, tools, and apparatus used in the work, and had and exercised absolute, unqualified, exclusive management and control over the selection of same, and had absolute control and management over everything connected with the work done on said excavation; and that the management and control so given to him was exercised by him without any right being reserved by defendant to in any way interfere in such means and methods as he might desire to use.

Defendant further pleaded that there were no acts of negligence as alleged in plaintiff's petition, and that all the teams, tools, and appliances used by Whittington were reasonably safe and sound, of the makes in general use, and that plaintiff's injuries were the result of an unseen and in-

evitable accident, and one over which and against which provisions could not have been made, as the doubletrees and singletrees seemed to be in good condition when placed in use. That plaintiff was injured by the negligence of one Tom Hall, if anyone was negligent, in driving the team so as to drive or permit one horse to go ahead of the other, and by so driving the accident happened, and would not and could not have happened if said driver had driven said horses together; and that Tom Hall was the fellow servant of plaintiff, and that if there was any negligence connected with the accident out of which plaintiff's injuries grew, the danger was apparent and visible to plaintiff when he engaged in same, and he assumed all such risk; and that plaintiff was guilty of contributory negligence in getting on the rope.

A trial by the court and a jury resulted in a judgment against the appellant for the sum of $100. Motion for new trial was duly made and overruled, exceptions taken, and appeal perfected to this court by giving notice of appeal.

The appellant presents several assignments of error in his brief for our consideration, in which he complains of the charge of the court and the refusal of the court to give a special charge requested by it; and further contends that the judgment is not supported by the evidence, in that the evidence shows that plaintiff at the time he received the injury was not in the employ of the city of Groesbeck, but was in the employ of J. H. Whittington, who sustained the relation of an independent contractor in reference to the work in the performance of which the plaintiff was injured.

We will first consider the contention that the evidence is not sufficient to support the judgment.

The only evidence in reference to the relation that Whittington sustained toward the city in performing the work is the testimony of Whittington himself, who testified as follows: "I now reside in Falls County, Texas. On May 12, 1897, I resided in Groesbeck, Limestone County, Texas. I know the plaintiff. On that day [the day of the accident] I was engaged in excavating a reservoir for the Groesbeck waterworks. All the hands on the work, including the plaintiff, were under my charge or direction. Plaintiff was hurt in an accident on that day on the work. We were engaged in pulling down some trees, and had a rope tied up near the top of a tree and a team hitched to the end of the rope, pulling on it; the plaintiff and I were on the rope, when the clip pulled off one end of the doubletree and let that end go back, and the other clip pulled off and the doubletree flew back and struck him under the arm. I did not notice before the accident to see if the clips were fast to the doubletree or were loose from same. Plaintiff was employed to do any and all kinds of work on the job. I can not say that I ordered plaintiff to get on the rope where he was when he was injured."

On cross-examination this witness stated: "The work I engaged to do was the excavation of a place to hold water to supply the city of Groesbeck. The contract between me and the city of Groesbeck was oral, and

was never reduced to writing. The city employed me to make the excavation and to remove all trees in the way and to complete the entire job, and left it entirely with me and to my judgment what means to use and how to do the work. The agreement was that the city, having instructed me what it wanted done, it left me entirely free to adopt my own methods in performing the work, and the city and its officers did not reserve the right to make any suggestions in the matter as to how to do it, but left it entirely to me. I employed and paid all the hands, and hired and paid for the use of all the teams used on the work, and I made my own selection of hands and teams and everything else used in the work independently of the city's direction or control. The city council which made the contract with me agreed, and it was the contract, that I was to hire all hands and all teams and all things necessary to complete the job to be done, which the city had laid out, and I was to keep and did keep an account of all expenses, and the city was to pay and did pay all such expenses when the work was completed, and paid me so much per day for each day I was engaged in the work. It was my team and rope attached to the tree when plaintiff was injured. The doubletree was G. H. Parker's, and I think the singletree was his. I hired them from him. The team was a gentle team. The rope and doubletree and singletree were of the ordinary make and in general use wherever teams were used, and appeared to be safe and in good condition when plaintiff was injured."

This testimony is undisputed. It is shown by this evidence that the city employed Whittington to complete the entire job, and left it entirely to him and to his judgment as to how the work should be done. He was to adopt his own methods in performing the work. Neither the city nor its officers reserved the right to make any suggestions as to how it should be done. He hired all the hands and teams and kept an account of the expenses, and when the job was completed the city paid all the expenses, and paid Whittington so much per day for each day he was engaged on the job.

It is contended that because Whittington was paid by the day that this destroys his character as an independent contractor. It has been held that the fact that a contractor is paid by the day does not necessarily destroy the independent character of his employment. Forsythe v. Hooper, 11 Allen, 419; Corbin v. American Mills, 27 Conn., 274; Harrison v. Collins, 86 Pa. St., 153.

Nor does the fact that Whittington kept an account of the expenses incurred by him in hiring of men and teams, and that upon the completion of the job the city paid such expenses, destroy the independent character of his employment. If Whittington in the course of his occupation represented the will of the city only as to the result of the work, and not as to the means by which he performed it, he was an independent contractor. 1 Shearm. & Redf. on Neg., 5 ed., secs. 164, 165; Wallace v. Cotton Oil Co., 91 Texas, 21; Harrison v. Collins, 86 Pa. St., 153, same case, 27 Am. Rep., 699; Corbin v. American Mills, 27 Conn., 274, same case, 71 Am. Dec., 63.

The contract, as shown by the record under which Whittington engaged to complete the work, left the city without the right to direct how the work should be done, or what means should be used in performing it. It may be that the terms of Whittington's contract with the city were not fully developed in the trial court. As shown by the record on this appeal the evidence was insufficient to support a judgment against the city of Groesbeck. This holding makes it unnecessary to discuss the other assignments of error.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*