HIGRADE LIGNITE CO. v. COURSON.
(No. 2223.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 19, 1920. Rehearing Denied March 4, 1920.)

1. MASTER AND SERVANT ☞316(1) — MINE LESSEE "INDEPENDENT CONTRACTOR," RESPONSIBLE TO EMPLOYÉS FOR INJURIES.

Where a lessee, by terms of lease, was to operate mining properties at his own expense, purchase and install new machinery that might be necessary, pay taxes, etc., and the lessor, during the existence of the lease, did not exercise or attempt to exercise any control over the details of operating, or in controlling employés, lessee was an independent contractor, responsible to employés for injuries, though his compensation was practically a salary, and lessor furnished the money required to pay employés and operating expenses.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Independent Contractor.]

2. MASTER AND SERVANT ☞330(1) — INDEPENDENT CONTRACTOR'S EMPLOYÉ, ALLEGING SHAM CONTRACT, MUST PROVE FACT.

In an employé's action against the owner of a mine and his lessee for injuries, issue being whether the lessee, who hired plaintiff, was an independent contractor, plaintiff, who alleged that the contract was a sham, assumed burden of proving such fact.

Appeal from District Court, Hopkins County; Wm. Pierson, Judge.

Action by Carl Courson against the Higrade Lignite Company and another. Judgment against defendant named, and it appeals. Reversed and rendered.

Clark & Sweeton, of Greenville, for appellant.

G. H. Crane and R. D. Allen, both of Sulphur Springs, for appellee.

HODGES, J. The appellee was injured while employed in a lignite mine owned by the appellant. He sued both the appellant and S. R. Hill for damages. He alleged that the appellant was the owner of the mine, and was operating the same, with S. R. Hill, as its superintendent, general manager, and agent. It further alleged that, if mistaken in the above averments, then Hill was operating the mine under a partnership arrangement or understanding of some character between him and the appellant, but which was unknown to the appellee. Hill answered, claiming that he was operating the mine as an independent contractor but denying the charges of negligence as a ground of recovery for the injuries claimed. The appellant answered, denying that it had any interest in the operation of the mine, or any connection, either as an employer or partner, with Hill in the operation of the same, disclaiming responsibility upon the ground that Hill was an independent contractor, in full control of the operation of the mine by virtue of a contract existing between it and Hill. The matters in dispute were submitted to a jury, and a verdict returned, exonerating Hill from any liability, and finding in favor of the appellee against the appellant for damages.

In this appeal the appellant insists that a verdict should have been instructed in its favor, upon the ground that the evidence conclusively showed that Hill was an independent contractor, and was operating the mine as such, and that he alone was the employer of the appellee when the latter was injured. As evidence of the relations existing between the appellant and Hill in the operation of the mine, the following contract was introduced in evidence:

"State of Texas, County of Hunt:

"This lease agreement, made and entered into this the 14th day of August, A. D. 1918, by and between the Higrade Lignite Company, a corporation of the county of Hunt and state of Texas, party of the first part, and S. R. Hill, of ——— county and state of Texas, party of the second part, witnesseth:

"That whereas, party of the first part is the owner and in possession of certain coal mines, machinery, tools, tracks, mules, and apparatus used for mining purposes situated on, in, and under that certain tract of land situated in Hopkins county, Texas, being the 80 acres of land conveyed on the 18th day of June, 1917, to party of the first part, by J. F. Smith and wife, B. N. Smith and wife, and

Jeff Kelly and wife, to which said deed reference is here made for a full and complete description of said mining properties, together with all machinery, tools, implements, tracks, stock, and apparatus to the second party:

"Now, therefore, in consideration of the sum of one dollar ($1.00) to it in hand paid, the receipt of which is hereby acknowledged, and the further consideration of the covenants and agreements hereinafter mentioned, the Higrade Lignite Company does hereby lease and demise unto the said S. R. Hill the above-described premises, together with all machinery, tools, implements, tracks, stock, and apparatus owned by said company and situated on said premises, to have and to hold all of said premises and property for a period of one year from and after the date hereof.

"1. Said party of the second part agrees to take possession of the properties above described, and to begin mining operations immediately after the date hereof, and to operate said mining properties continuously at his own expense during the term of this lease. Said second party further agrees to bear all expenses of every kind and character incident to or connected with said mining operations. Said second party further agrees, at his own expense, to keep in good repair all of first party's tools, apparatus, implements, tracks, and machinery of all kinds, and at the expiration of this lease to deliver same to said first party in as good condition as when he received them, natural wear and tear excepted.

"2. Said second party further agrees to purchase and install any new machinery that may be necessary to properly develop and operate said mining properties, and to furnish said first party a bill of same, and if it appears that said machinery was necessary to the proper development and operation of said mining properties said first party agrees to reimburse said second party for all expenses incident to the purchasing and installment of such new machinery.

"3. Said second party further agrees to pay all taxes of every kind that may become due on the above-described property during the term of this lease.

"4. Said first party further agrees to pay said second party 3 cents per ton for each and every ton of coal mined or caused to be mined by him from said properties during the term of this lease. Said payment to be made at the Greenville National Exchange Bank, of Greenville, Texas, on the 1st day of each month, it is understood, however, that said second party shall realize out of the operations of said properties during the term of said lease the sum of $2,400. If, therefore, at the expiration of this lease contract an audit of the books, records, and business of said second party should disclose that he has made less than $2,400 net from the operation of said properties, then first party agrees to pay him the deficit, said payment to be made at the Greenville National Exchange Bank of Greenville, Texas. But if such an audit should disclose that second party has realized more than $2,400 net from the operation of said properties, then said second party agrees to pay to first party such overplus, said payment to be made at the Greenville National Exchange Bank of Greenville, Texas.

"5. It is further understood and agreed that said second party is not the agent of first party, and is not authorized to act for, in behalf of, or to bind said first party in any way whatsoever. Higrade Lignite Company (Party of First Part), by Jno. D. Middleton, President. [Seal.] Attest: R. R. Anderson, Secretary. S. R. Hill, Party of Second Part."

The appellee pleaded that this contract was a sham and a mere device, resorted to for the purpose of disguising the true relationship existing between Hill and the appellant in the operation of the mine.

Hill testified, in substance, that he entered into a lease contract with the appellant on the 14th day of August, 1918, and since that time had operated the mine as a lessee; that he had exclusive management and control of the mine; that since the making of that contract he had authority over the employés, power to hire and discharge them, and to direct their work; that the appellant company had no authority in that respect since his lease began; that his first contract expired on August 4, 1919, and that he had made a new lease contract for another year; he had hired the appellee, and the latter was working for him at the time he received his injury; he alone paid the appellee his wages, and the appellant had nothing whatever to do with his employment; that it probably did not even know that the appellee was working in the mine. After repeating, in substance, the provisions embraced in the contract relative to his compensation, he stated that he drew expense money against sales of the coal to the appellant; the mine produced about 150 tons of coal a day; he paid the operating expenses, the pay roll per month amounting to between $1,000 and $1,200, depending upon the amount of work done; some weeks he did not get any orders from the appellant, and other weeks they worked every day; he worked at the mine, and shipped the coal out as he got orders from the appellant; the appellant did not tell him when to work, or how to work; it sent him shipping orders; he was not under its orders as to anything that he did about the mine—the shipping of the coal, or anything like that. He testified, further, that the appellant took all the coal that was mined by him and his employés; that his compensation was paid him monthly in sums of $200; that he drew on the appellant weekly for the money to pay the expenses of operating the mine, including the wages of the employés.

The appellee testified that he was employed by Hill in May of 1919, and was working in the mine at the time he was injured; that he had been at work there about two weeks or a little longer; he was working under the direction of Mr. Workman, a pit foreman; Mr. Hill was down there in the mine from once to twice a week, or more

frequently, depending upon the occasion. Other testimony shows that Hill employed, supervised and discharged the employés and directed the details of the work that was done in the mine. This contract between him and the appellant upon its face shows that Hill was an independent contractor and was the employer of those whom he engaged to work in the mine. There is no evidence that tends to show that the contract was other than what it purported to be—a true expression of the business relationship existing between Hill and the appellant. No instance is shown where the appellant at any time or in any manner, during the existence of that contract exercised or attempted to exercise any control whatever over the details of operating the mine, or in controlling the employment of any of the operatives, or that it did anything inconsistent with the terms of its contract. It is true that Hill's compensation was practically a salary, and that the appellant furnished at weekly intervals the money required to pay the employés and the expenses of operating the mine; but those facts alone are not sufficient to make it the employer of the appellee. The latter was hired by Hill; took his orders from Hill, or from some one whom Hill had employed for that purpose.

Counsel for the appellee refers to the case of Western Indemnity Co. v. Prater and others, 213 S. W 355, and quotes the following as a correct expression of the rule for determining whether or not Hill was an independent contractor:

"Only such an employé * * * as is free to do the work he is employed to do in his own way, without directions, orders, let, or hindrance from his employer, being responsible to him only for the result, is regarded as an independent contractor. In other words, he must be independent and free from the control of his employer."

[1, 2] We think the testimony in this case shows without contradiction that Hill occupied that status. Having alleged that the contract was other, than what it purported to be, the appellee assumed the burden of proving that it was. In this he failed, and we must therefore take the contract as undisputed evidence of the relationship existing between Hill and the appellant.

We are of the opinion that the court should have instructed a verdict in favor of the appellant. The following authorities sustain that proposition: City of Groesbeck v. Pinson, 21 Tex. Civ. App. 44, 50 S. W. 620; Edmundson v. Coco Cola Co., 150 S. W. 273; Wallace v. Oil Co. 91 Tex. 21, 40 S. W. 399; Southern Oil Co. v. Church, 32 Tex. Civ. App. 325, 74 S. W. 798, 75 S. W. 817; Telephone Co. v. Paris, 87 S. W. 724, 39 Tex. Civ. App. 424; Simonton v. Perry, 62 S. W. 1090; Smith v. Humphreyville, 47 Tex. Civ. App.

140, 104 S. W. 495; Eckert's Case, 233 Mass. 577, 124 N. E. 421, and the cases there cited.

The judgment of the district court against the appellant will be reversed, and judgment will be here rendered in its favor.