**RAY v. ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS.  (No. 435.)**

(Court of Civil Appeals of Texas.   Waco. Dec. 2, 1926.   Rehearing Denied Jan. 20, 1927.)

**1. Master and servant ⟝316(1)—Operator of railroad gravel pit held independent contractor.**

Person operating gravel pit and loading rack owned by railroad, who furnished his own tools and appliances, and was paid by the yard for gravel loaded, *held* an independent contractor as affecting liability of railroad for injuries to one of his employés.

**2. Master and servant ⟝321—Railroad held not liable for injuries to employé of independent contractor operating gravel pit equipped with loading rack without railing.**

Railroad, owning gravel pit and loading rack, which was operated by an independent contractor, *held* not liable for injuries to employé of such independent contractor caused by frightened team pushing such employé from loading rack which had no banisters or railing.

**3. Master and servant ⟝316(1)—Owner of premises is under no duty to protect employé of independent contractor against obvious dangers.**

Servant of independent contractor is an invitee to whom the owner of premises owes no duty to protect against open, obvious, or apparent dangers or dangers known to such employé.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by R. H. Ray against the St. Louis Southwestern Railway Company of Texas. Judgment for defendant, and plaintiff appeals. Affirmed.

W. L. Wray, of Hillsboro, and Lem Wray, of Waxahachie, for appellant.

Collins, Dupree & Crenshaw, of Hillsboro, for appellee.

STANFORD, J.  Appellant sued apellee for damages for personal injuries to himself, alleging that appellant constructed and used for mining gravel in its gravel pit certain loading traps or racks upon lands owned by appellee; that appellant, while employed under H. F. Curry, who was in charge of the loading operations, while in his proper place dumping the wheelers, was knocked off, or ejected from, the trap or rack to the ground below by a team that was unruly and frightened; that appellee was negligent in furnishing the trap or rack as a completed structure, without banisters or barriers to make the place reasonably safe for employés, and that such negligence was the proximate cause of the injury. Appellee, among other things, alleged that Curry was an independent contractor, and that appellant was not in the service of appellee, but was in the service of said Curry, etc. At the conclusion of plaintiff's (appellant's) evidence the court instructed a verdict for defendant (appellee), and from the judgment rendered on such verdict plaintiff, as appellant, prosecutes this appeal.

[1] As there is a marked distinction between the duties of a master to his servant or employé and the duties of an employer to the servants of his independent contractor, we think the first and most important question to be determined is: Was Curry, the person under whom appellant was working at the time of the injury, an independent contractor? The record discloses that the trap was somewhat similar to a bridge, extending over an excavation, with an opening near the center of said trap. A box car would be placed under said opening in said trap, and a wagon loaded with gravel, drawn by horses or mules, would be driven upon said trap and over said opening, and the gravel dropped through said opening into said box car. The record further discloses that appellee owned the gravel pit and the loading rack, and maintained and kept same in repair, and also furnished the dynamite, fuse, and caps for the blasting in the pit, but did not furnish any other tools or appliances necessary to take out gravel. It was shown without any contradiction by H. F. Curry, appellant's own witness, that he began loading gravel for appellee August 7, 1924, and continued until after the injury, under a written contract with appellee; that no agent of appellee directed him, or had any right to direct him, about how he was to do the work; that he had entire charge and control of how he was to do the work, how he was to excavate the gravel, and how he was to load it into the cars; that he made his own contract of employment with the men he used to do that work; that he paid them out of his own personal funds; that he agreed with them on the wages he would pay them and the hours per day they would work; that he hired and fired them without consulting anybody; that he usually paid them in cash. The only thing the railroad company had to

⟝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

do with the matter was, when he furnished them evidence showing that he had loaded so many cubic yards of gravel, they would pay him on the basis of 25 cents per cubic yard for the gravel loaded; that "all the railroad company had to do with the work was to pay me 25 cents per cubic yard for the gravel loaded. I employed my own men, and paid them myself. I used my own mules and hired some mules. I furnished the mules, the men." Mr. Ray (appellant) had formerly been section foreman, working for the railroad out there. He had quit the railroad and was later employed by H. F. Curry, and was at work for H. F. Curry loading gravel at the time of the injury. H. F. Curry paid appellant out of his own personal funds for all the work he did there loading gravel. H. F. Curry further testified:

·"I don't remember how long I had had that team that caused the accident on the work before the accident. They had been there several days. It was not my team; it was a hired team. It belonged to Joe Burks here in Hillsboro. I hired the team from him. I was paying him $5 a day for the use of the team and driver. I was paying that out of my own personal money."

Appellant testified: .

"I went down to Mr. Curry, * * * and told him I wanted a job. I knew that Curry was running the gravel pit, hiring and firing his men. I knew he was paying them himself. H. F. Curry hired me to work for him. I knew that I was working for H. F. Curry. * * * When I was working for the St. Louis Southwestern Railway Company said company paid me, and when I was working for H. F. Curry at the time I got hurt, H. F. Curry paid me."

The evidence introduced by appellant shows without any dispute that H. F. Curry had entire charge, control, and direction of the manner and method of the work of excavating and loading the gravel; that he hired and discharged his own men without interference, restriction, or limitation by any of the agents of appellee; that he himself was not on the pay roll of appellee, nor were any of his employés; that he was paid by the cubic yard for all the gravel mined by him. The record, without dispute, shows further that H. F. Curry, under his contract with appellee, was left free to do the work of loading said gravel in his own way, without directions, orders, let, or hindrance from appellee, his employer, being responsible to appellee only for the result, and the only duty or right resting upon appellee in connection with the loading of said gravel was to pay H. F. Curry 25 cents per cubic yard for the gravel loaded. This, we think, made H. F. Curry as a matter of law an independent contractor. Cunningham v. Railroad Co., 51 Tex. 503, 32 Am. Rep. 632; Walker v. T. & N. O. Ry. Co., 51 Tex. Civ. App. 391, 112 S. W. 430; Smith

v. Humphreyville, 47 Tex. Civ. App. 140, 104 S. W. 495; Higrade Lignite Co. v. Courson (Tex. Civ. App.) 219 S. W. 230; Williams. v. Gulf Mining Co. (Tex. Civ. App.) 229 S. W. 959; Shannon v. Indemnity Co. (Tex. Com. App.) 257 S. W. 522; King v. Galloway (Tex. Com. App.) 284 S. W. 942.

[2] The only remaining question necessary to be considered is: Did the appellee, as the owner of the premises on which the work was being done, owe to appellant, as the servant of an independent contractor and an invitee on said premises, any legal duty to guard or protect him against a danger which was as open, obvious, and apparent to appellant as to appellee, and which was well known to appellant? Appellant testified that, while he was section foreman for appellee, he had assisted in the construction of this trap, building the same under the direction of the appellee's road master. Appellant testified further:

"I don't know when this team I am talking about was put on the work. They were there when I went there. I don't know whether they were breaking them in or not. * * * I knew they were shy. They had come by there shying a good many times while I was working there. I knew the danger of a mule that was shying around, and I knew I had to look out for them. I knew the width of the platform there. I knew the actual operation from my experience in dumping there. As to where men ought to stand and what they ought to look out for, I knew all of that when I went to work there. I had been around there a right smart before I went to work for Mr. Curry. I had seen teams coming up on there time after time and month after month. I had seen some of them shy, and I knew the danger of teams coming up on there and shying to the man that was on the platform. Knowing all of those facts, I went down and asked Mr. Curry to give me a job, and he hired me. H. F. Curry hired me to work for him. I knew I was working for H. F. Curry. * * * I had seen the mules shying there, and that cautioned me to look out for them. I thought if I was not cautious about it they might butt up against me. Long before I went to work for Mr. Curry there I knew and could see that this platform and trap had no banisters on it, but I didn't give it a thought. * * * I accepted the job as dumper for Curry, knowing the fact that this platform on which I was to work had no banisters on it. Although I had seen this team shy on several occasions coming up on the dump and crossing this hole, I didn't quit when I saw that. I knew if the team got to pushing there was danger. I had seen them push. I kept on working for Mr. Curry. I didn't quit."

[3] Appellant, as the servant of the independent contractor Curry, was, in his relations with appellee, an invitee upon the premises of appellee, and as such invitee the appellee was under the legal duty to guard him against any dangerous condition of said premises which was known to appellee and not known to appellant, but appellee was un-

der no obligation to protect appellant against dangers that were open, obvious, and apparent to him, and about which he knew and understood as much as appellee. Appellant's own evidence shows he assisted in constructing the loading trap. He knew there were no railings or banisters on same. In fact, this was obvious to him. He knew that if a team shied it might push him off said trap. He also knew that this particular team which caused the injury had been shying and was liable to push against him and crowd him off the trap, just as it did, and, knowing all these facts, he continued in the work. There were no latent defects or dangers about said premises. There were no defects nor dangers connected with said work that were not open, visible, and patent to appellant, and fully known and appreciated by appellant. Appellant not being the servant of appellee, but of H. F. Curry, the independent contractor, there is no evidence of any breach of duty on the part of appellee toward appellant. Cunningham v. I. Railroad Co., 51 Tex. 503, 32 Am. Rep. 632; Wallace v. Southern Oil Co., 91 Tex. 18, 40 S. W. 399; Southern Oil Co. v. Church, 32 Tex. Civ. App. 325, 74 S. W. 797, 75 S. W. 817; 29 Cyc. pp. 453, 454, note 88.

The above questions being resolved in favor of appellee, the trial court was correct in directing a verdict for appellee and the proper judgment having been rendered, it is the duty of this court to affirm same, as none of the other questions presented could be ground for reversal. We overrule all appellant's assignments, and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

In response to appellant's request for supplemental findings, we make the following additional findings of fact:

We find H. F. Curry loaded gravel for appellee practically all the time under a written contract. For a few days, between the time of the expiration of one contract and the receipt of another, he had no written contract, but continued to work under the same terms as the preceding written contract. Curry was to load the cars from the traps constructed by the railroad. That was a part of the consideration. Appellee furnished a box car for Curry's employés to live in while engaged in said work. H. F. Curry made a written report of R. H. Ray's injury to the roadmaster of appellee. The contract between appellee and H. F. Curry could be terminated on five days' notice by appellee. A part of the time Curry was loading said gravel appellee furnished him free transportation over its road and a part of the time he paid his way.

Having made the above additional findings as requested by appellant, we hereby overrule his motion for rehearing.