## GIBSON v. LAMESA COTTON OIL CO.
### No. 12825.

United States Court of Appeals,
Fifth Circuit.

Jan. 10, 1950.

John J. Watts, Odessa, Tex., for appellant.

James Little, Big Spring, Tex., Chas. C. Crenshaw, Sr., Lubbock, Tex., for appellee.

Before HUTCHESON, WALLER, and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

In this action the appellant sought to recover damages for a serious and per-manently disabling injury sustained upon the premises of the defendant when he stepped into a seed conveying auger in the seed tunnel of the defendant's cotton oil plant. The basis of his claim was that he was upon the premises in the status of an invitee because of the well established custom of the defendant during seasonal peaks of manufacture to employ workers not in the office alone, but generally in and about its buildings and yards. Upon the trial the defendant, both at the conclusion of the complainant's evidence, and again after all of the evidence for both parties was in, moved for an instructed verdict in its favor upon various stated grounds, each dealing with the sufficiency of the evidence under any alternative theory to sustain a verdict for the complainant, and further, upon the ground that the evidence showed that the negligence of the complainant was the proximate cause of the accident. The motion was taken under advisement by the Court and two special issues only were submitted to the jury: First, was the complainant, at the time he went to defendant's premises on the night in question, an invitee, a licensee, or a trespasser; and secondly, whether before the complainant was injured on the night in question, the superintendent had directed him to leave the defendant's premises. The jury determined that the complainant was an invitee and had not been directed to leave the premises. After reception of the verdict the Court, however, determined "there are certain points in this litigation which from a standpoint of law, require that a judgment be rendered for the defendant." He sustained the motion previously made for an instructed verdict for the defendant. This action is here assigned as error.

Consideration of the evidence in the record convinces us that the trial Court correctly held that the defendant was entitled to an instructed verdict as a matter of law. In so holding, we must of course give effect to all of the evidence in behalf of the complainant which the jury would have been authorized to accept as supporting the right of the complainant to recover. Thus, for the purpose of the decision here, we concede that the complainant went up-

on the premises of the defendant as an invitee for the purpose of inquiring about employment. He had made such inquiry of one who may have had authority to employ. He volunteered to help in the realignment of a motor and pulley and had conversation with employees of the defendant, one of whom, McDaniel, was his friend, and complainant and McDaniel, as well as another employee who might by some stretch be said to have been a straw boss, took a drink of whiskey from a bottle brought by the complainant. The time was between eight and nine o'clock at night. The complainant approached the place where he found the defendant's employees through some of the defendant's buildings and a roadway. After all discussion as to employment was concluded and complainant had been told that he would have to see later about securing a job, the machinery motivated by the engine which the parties had worked upon, was started and began turning the said conveyor or auger in the seed tank and tunnel. The physical layout was that there was a small machinery shed adjacent to the said tank and tunnel of the defendant. The seed tank was a steel tank some fifty feet in diameter and through which extended a seed tunnel. In this tunnel was the seed conveyor or auger not covered or protected as it should have been. The entrance to the tunnel was through a small door twenty-two inches wide and not quite five feet high, and of this five feet height approximately eighteen inches was covered by driving chains, which when the machinery was in motion, turned in propelling the augers which kept the seed falling down upon the main conveyor. The opening of the seed tunnel on the other end away from the machinery referred to was likewise obstructed by seed blowing machinery. The complainant had helped construct the seed tank and was familiar with its purpose and function, but not familiar with the construction, condition or protection around the main conveyor by which he was subsequently injured. Any one entering the seed tunnel would have to stoop down, practically crawl, under the moving chains, though after entering the tank the tunnel was of sufficient height for a man to stand, as an employee did in keeping the seed falling upon the main conveyor. The tunnel was dimly lighted. After the motor was aligned, and any claim of business with the defendant concluded, the said conveying machinery was started in motion and complainant stated that he was going home. McDaniel's employment required his presence in the seed tunnel and he went under the chains and began his work some distance from the opening nearest where the parties had been standing. The other employees left and complainant stooped under the chains and entered the seed tank tunnel for the purpose, as stated by him, of going to tell McDaniel again that he was going home. After taking a step or two, his foot went into the conveyor auger and his leg was so crushed as to require amputation to within about two and a half inches of the hip joint. Complainant also contends that he was using this tunnel as a near way home. The evidence will not support a finding that it was any part of any path or roadway leading out of the premises. It was a mere structure, which no reasonable person with complainant's knowledge would assume was a passageway.

Under the circumstances disclosed by the record, and stated as above in the light most possibly favorable to the complainant, there is no necessity for any extended discussion of the legal authorities and argument presented by appellant. Neither the rulings announced in cases where an invitee has sustained injury in using a means of exit by a *door* which leads to a dangerous place, Montgomery v. Allis-Chalmers Mfg. Co., et al., Tex.Civ.App., 164 S.W.2d 556; or an instance where the owner of the premises should have *anticipated the presence* of a member of the public on the portion of the premises devoted to public use, Texaco Country Club v. Wade, et al., Tex.Civ.App., 163 S.W.2d 219; or which prescribes the duty of the owner, as to invitees, to have the premises in reasonably safe condition and give warning of *latent* or *concealed perils,* Bustillos v. Southwestern Portland Cement Co., Tex.Com.App., 211 S.W. 929, and other similar holdings, have any application here. Each of the cases and principles relied

upon by the appellant are of course predicated upon the existence of the facts involved, as are all negligence cases. In the present case, it is clear from the evidence that the tank and tunnel and machinery could not conceivably be considered in any sense or degree a means of entrance or exit, and even if the interior be considered as a concealed peril, the physical circumstances of the size and nature of the entrance into the tank, and the moving chains across a part of such entrance, furnished even more unquestioned notice of warning than would a sign, the absence of which is relied upon by the appellant. Plainly stated, the surroundings were such as to warn any one with the knowledge that the complainant had that this seed tunnel was not a place for any one to be who was not required as the result of his specific employment to be there. The serious and disabling injury of the complainant is regrettable, but he was the author of his own misfortune, and there is no basis in the evidence for any finding that the negligence of the defendant in the construction and maintenance of the covering of said conveyor, the floor of the seed tunnel, was a breach of any duty owing the complainant, even if an invitee upon the premises generally, so as to authorize the recovery of damages by the complainant for injury arising from his own fault,—his negligence which finds no basis for excuse or extenuation in the record.

The action of the Court in directing a verdict for the defendant is correct, and the judgment is

Affirmed.