STEVENS

v.

**E. I. DU PONT DE NEMOURS & CO.**

No. 14539.

United States Court of Appeals Fifth Circuit.

Dec. 9, 1953.

Eugene N. Catlett, W. Kendall Baker, Burris, Benton, Baker & Zwiener, Houston, Tex., for appellant.

**416**

John F. Heard, Houston, Tex., Baker, Botts, Andrews & Parish, Houston, Tex., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

Appellant here, plaintiff below, was an employee of the Shaw Company, which, as a subcontractor of defendant, was laying underground plumbing sewerage lines in a building then in the foundation stage of its construction. After suing his employer's insurance carrier and obtaining a judgment for workmen's compensation, he brought this third party action, alleging that while engaged in and about the work of his employer, the negligence [1] of the defendant caused him to suffer a fall and to sustain damages as a result thereof.

Denying plaintiff's claims of injury and negligence, defendant further pleaded, "that if the plaintiff ever sustained an accident, which is denied, on or about December 30, 1949, such accident resulted from his own negligence in failing to walk carefully and watch where he was walking, and, in the alternative, that the damages, if any, complained of, were the result of an unavoidable accident."

Tried to a jury on evidence [2] which came in without substantial contradic-

1. This was his claim as he alleged it in his petition:

"On or about Dec. 30, 1949, plaintiff was an employee of B. F. Shaw or Benjamin F. Shaw, a sub-contractor doing construction work on the building owned and occupied by the defendant in this suit in Victoria, Victoria County, Texas. In the course of his employment for the said *Benjamin F. Shaw on said date,* plaintiff was traveling from one part of Building No. 3 of said DuPont plant to another part of the building, carrying a heavy tool box perched on his shoulder, *and assisted by another employee of Ben*jamin F. Shaw. While plaintiff and his fellow employee were straining under the weight of the heavy box of tools, a colored employee of E. I. DuPont de Nemours and Company, in the course and scope of his employment and in the furtherance of the defendant's business, was dragging the hose to an air cleaning machine along the floor where plaintiff was walking, and as plaintiff went to step across said hose, the colored boy negligently and carelessly jerked the hose, tripping plaintiff and causing him to fall to the floor and the heavy tool chest fell across his back and left leg, causing to him the serious and permanent injuries hereinafter described.

"Plaintiff would show that the defendant, its agents, servants, and employees, were each and all negligent in some one or more of the following respects and particulars:

"(a) In that defendant's employee failed to keep a reasonable and proper lookout for other employees traveling through the building of his employer on their various duties and occupations.

"(b) In that said employee of defendant negligently and carelessly 'drug' and jerked the air hose instead of carrying it from one position to another.

"(c) In that said air hose was being 'drug' across a passageway used continually by employees, and defendant and its employees failed to keep said passageway clear and safe for use.

"(d) In that defendant failed to have a foreman or other supervisor over the colored employee operating the air hose to see that such equipment was handled carefully and properly.

"(e) In that defendant failed to provide a reel or other equipment to transport the hose from one place to another so it would not need to be 'drug' across the used passageway.

"(f) In that defendant failed to provide a sufficient number of employees to carry the hose so it would not need to be 'drug' across the passageway by the single employee on the occasion in question.

"(g) *In that defendant failed to prop*erly train its employee in the use and handling of the air hose on the occasion in question.

"That each and all of the foregoing acts of omission and commission were each and all negligence, and were each and all a proximate cause of the accident and injuries to plaintiff and his damages and expenses resulting therefrom."

2. Cleveland Andrus, a witness for plaintiff, testified:

" * * * I had been working for this company about 9 months and Mr. Stevens about 6 months. The building was in the foundation stage. There was only the foundation to the building. There were ditches, trenches dug throughout the building. We were laying under

tion, there followed (1) a motion by defendant for an instructed verdict on

which the district judge reserved judgment, (2) a verdict of the jury in answer

ground plumbing, sewerage lines. The building was pretty well cut up. Plumbers were working in it. Laborers were working in it. The building we were working in later became a laboratory, cafeteria and office building. There were numerous air hoses used in connection with the construction work. We had run temporary air lines into the area. The air hoses were connected to those that ran throughout the building. Laborers used them for tamping machines and digging. They had air-driven shovels and tamped the area back in place. They were strung on the ground throughout. The hoses were roughly an inch and a quarter in diameter. In some instances they were connected to underground pipelines and in other instances used from air compressors. They might run one hose into the building from an outside supply and have what we call a 'Y' connection. There would be as many as three hoses leading off that. And then maybe another 'Y' and a half dozen hoses coming off it. As I recall, the connections originated to the hose being used were on the east side. Hose were scattered, running throughout the building. These trenches extended in all directions, underground pipelines, they were pretty well strung out all over. I was familiar with all of the men working at that time. B. F. Shaw Company had no negro employees at that time. There were negro laborers on the job digging the ditches and retamping earth and putting in sandfill for the concrete to be poured later. It was necessary from time to time to pump water out of ditches. This was performed by pumping with the suction hose thrown over in the ditch. The hose I have described were used for taking water from the ditches. They had different types of pumps, gasoline-driven and air-driven. * * *

"At the time this happened, we were moving from one location of the building to another, and were carrying a tool box. The tool box was roughly 2 feet wide, 18 inches deep, and, I guess, 3½ feet long, constructed of wood, with no handles on it. We had tools in it, hammers, chisel, soldering irons, oakum, lead and such things. I remember it was heavy enough to require two men to carry it, but the exact weight, I can't be sure of. I don't recall any handles on it, I know I had my hands underneath the box. I think he was ahead of me and I was following him. My vision was obscured from the ground as we proceed-

ed along, by carrying this large box in front of me I couldn't see the ground. We were going along and Mr. Stevens tripped and fell. The box fell partially on him, and I went down with the box to some extent myself. * * *"

" * * * The ground around there that day was slippery. It had been raining, there was no roof on the place. When Mr. Stevens slipped and fell, I think he fell into a ditch. The ditch was roughly 3 feet wide and about that deep. We were coming across the ditch, as if the ditch were in front of us; I think we were walking alongside the ditch. I don't think we were trying to cross it. Frankly, I do not have a very clear picture of what happened out there that day, it has been a long time. I do not know what caused Mr. Stevens to fall. When you asked me how it was that Mr. Stevens got into the ditch, I say he hung his foot on some object and became crossed up and fell. * * *"

Plaintiff testified:

" * * * I recall the incident that occurred. We had been putting the pipes under the cafeteria into the building. I believe on the east side, and we had our work bench on the southwest corner of the building and we were moving our box over to that location to work on that bench with some fabrication of pipe. We went after the box. The ditch was running east—north and south, I believe. We were walking along this ditch and on the end of the building the ground was clean and we were walking down to the south end of the building. Walking along this ditch I was carrying the box behind me, something like you carry a stretcher. All of a sudden—*I was watching the hose because they were laying all over the building and the negroes jerking them along for the spades and tampers for the pumps.* The box was pretty heavy, and as we were walking along the man behind me was coming along with me, *and I started to step over one of those hoses and a negro jerked it and it jumped off the ground about eight inches and caught my foot.* When I fell I hit the edge of the ditch and the bank gave way and I fell partly into the ditch with Mr. Andrus and the box behind me. I fell and slipped in the ditch after I was tripped. I fell in after I was tripped, yes sir." * * *

"I am not positive but I think it was around 1 P.M. We had carried the box about 100 feet. *There were several air hoses we crossed over—none of them*

**418**

to questions [3] propounded to it by the court under Rule 49(a), 28 U.S.C.A., (3) a motion by plaintiff for judgment on the verdict, and (4) motions by defendant for judgment notwithstanding the verdict, and, in the alternative, for a new trial.

The district judge, for the reasons stated in the memorandum [4] filed by him, granted defendant's motion and gave

*were moving as we crossed over them. There would be occasions when the workers using the hoses would move or jerk them when they would hang on a clod and maybe stuff laying around on the ground. I never had been tripped before. They moved the hoses 'Yes, sir', around where they were building. That was something we all watched for as we walked along there.* I never saw the particular person who was using the machine that was connected up with the hose prior to the time I fell. A group had been pumping water out of the ditch which was using an air hose, it ·could have been one of the hoses they were pumping water with. *As we approached the hose I saw it. I continued to watch it; as I came up there watching the hose it was not being moved at that particular time. It was still until I started to step over it. The hose was about 1¼ inch around.* The ditch was to my right. We were walking along the side of the ditch between 2 and 3 feet from the edge of it. The hose caught my left foot. *I saw the hose when it came up, but the box was heavy and the man behind me was helping me along and I couldn't stop. * * *"* (Emphasis supplied.)

3. *"Question No. One:*
"Was such fall which the plaintiff sustained on Dec. 30, 1949, the result of an unavoidable accident?
*"Answer:* It was or was not the result of an unavoidable accident: *was not."*
*"Question No. Three:*
"(a) Was the plaintiff· Lyle L. Stevens negligent in the manner in which he was walking and carrying the tool box immediately before or at the time that he sustained the fall?
*"Answer:* The plaintiff was or was not negligent: *was not.*
"(b) Was such negligence a proximate cause of the plaintiff's fall? .
*"Answer:* Such negligence was or was not a proximate cause: *was."*

4. "On careful review of the evidence, I am convinced that I was in error in submitting the case to the jury, and that the motion of defendant for directed verdict was meritorious· and should have been granted. For that reason, the motion of plaintiff for judgment on the verdict

is denied, and the motion of defendant for judgment notwithstanding the verdict is granted.

"The plaintiff was an employee of an independent contractor engaged in work upon a building at the site of the defendant's plant. At the time of the accident, he was engaged with his co-employees in work upon the building in the course of construction. He and a co-employee were carrying a heavy tool box between them, the plaintiff walking forward with the weight of his end of the box supported by his hands behind him, in a manner described by the witnesses as 'stretcher fashion'. The two men were carrying the tool box across the concrete floor of the partially completed building. Employees of the defendant were likewise working in the immediate vicinity, and a number were using air hammers or air tampers, each of such machines being connected by an air hose to an air compressor some distance away. The concrete floor which the plaintiff was undertaking to cross was littered with these air hoses, which were moved and pulled about from time to time as the defendant's workmen progressed with their work. The plaintiff saw and knew of the presence of these air hoses, and was fully aware of the fact that the defendant's workmen were required to and did pull and move the hoses about. As he and his co-employee carried the tool box across the floor, he stumbled and fell over an air hose which was being moved by one of the defendant's workmen, who at the time had pulled or jerked the hose and caused it to ripple along the floor in an effort to disengage it from some obstruction. The plaintiff saw this particular hose being moved before he caught his foot in it and fell. Apparently, he was caused to fall by reason of the weight or the momentum resulting from the load which he was carrying.

"In my opinion, this does not raise a jury question of negligence. In cases of this kind, liability is based upon superior knowledge of the defendant of the danger, and where the danger is open, obvious, and as well or better known to the plaintiff then to the defendant, there can be no recovery. Hall v. Medical Bldg. of Houst[on, Tex., Sup.], 251 S.W.2d 497. The plaintiff here was

judgment accordingly, and this appeal followed.

Here appellant insists that the evidence, uncontradicted as it was, made out a case at least for a jury verdict, and the jury having found for plaintiff, its verdict should not have been set aside.

We do not think so. Indeed we think it plain that no case for recovery was made out. The testimony of plaintiff's witness Andrus presented a condition and situation requiring the application of the principles dealt with by the district judge in his memorandum, and the plaintiff, with commendable frankness and candor admitted his personal knowledge of the condition and situation. The authorities [5] cited by the district judge applied to the undisputed facts compelled the conclusion reached by him.

The judgment was right. It is affirmed.

RIVES, Circuit Judge (dissenting).

The evidence was ample, I think, to sustain the answers of the jury to Question No. Two:

*"Question No. Two:*

"(a) Was any agent, servant, or employee of the defendant E. I. DuPont de Nemours & Co. negligent in pulling or jerking an air hose immediately before or at the time of the plaintiff's fall?

*"Answer*: The employee of the defendant was—or was not—negligent:—*was.*

"(b) Was such negligence a proximate cause of the plaintiff's fall?

*"Answer:* Such negligence was—or was not—a proximate cause:—*was."*

The jury were further authorized, I think, to find that plaintiff was not contributorily negligent (Question No. Three and Answer thereto quoted in footnote 3 to the majority opinion). The plaintiff could not avoid being tripped. "I saw the hose when it came up, but the box was heavy and the man behind me was helping me along and I couldn't stop. The hose jerked up in front of me and it tripped me before I could stop." The jury might well have found from the evidence that defendant's employee, charged with knowledge of plaintiff's unavoidable peril and of his inability to stop, was negligent in suddenly jerking up the air hose immediately in front of the plaintiff, and that such negligence proximately resulted in plaintiff's serious injury. I, therefore, respectfully dissent.

---

fully conversant with the danger, and has testified that by reason thereof, he was keeping a particularly sharp lookout to prevent stepping upon or across the hoses which were in his path. There was no hidden, concealed or unknown danger, and no reason why the plaintiff would have sustained a fall save for the heavy load he was carrying. Apparently, there were other routes available to him without having to cross the floor on which the work was in progress. For similar cases, see Kuptz v. [Ralph] Sollit[t] & Sons, etc., [5 Cir.], 88 F.2d 532; Howell v. Fort Worth Stockyards Co., [5 Cir.], 108 F.2d 593; and Gibson v. Lamesa Cotton Oil Co., [5 Cir.], 178 F.2d 959.

"The foregoing cases likewise hold, as I conceive to be the case here, that if it be considered the defendant in anywise was guilty of negligence, then as a matter of law, the plaintiff was guilty of contributory negligence which would bar his recovery."

5. Others to the same effect are: 38 Am. Jur. pp. 757–758, Sec. 97; Houston National Bank v. Adair, 146 Tex. 387, 390, 207 S.W.2d 374; A. C. Burton Co. v. Stasny, Tex.Civ.App., 223 S.W.2d 310, application for writ of error refused; Marshall v. San Jacinto Bldg., Inc., Tex. Civ.App., 67 S.W.2d 372 application for writ of error refused; 65 C.J.S., Negligence, § 50, pages 541, 543, 545; Beeville Cotton Oil Co. v. Sells, Tex.Civ. App., 84 S.W.2d 575; Ray v. St. Louis S. W. Ry. Co., Tex.Civ.App., 289 S.W. 1030, application for writ of error refused; Hodges v. Nix, Tex.Civ.App., 225 S.W.2d 576; Jones v. Beck, Tex.Civ. App., 109 S.W.2d 787; 23 Tex.Jur. Sec. 21, p. 568; Transitory conditions, Allen v. Republic Bldg. Co., Tex.Civ.App., 84 S.W.2d 506.