CONRAD WOLF, Respondent, v. THE AMERICAN TRACT SOCIETY, Impleaded with JOHN DOWNEY et al., Appellants.

NEGLIGENCE — IDENTIFICATION OF WRONGDOER. Where, under the maxim *res ipsa loquitur*, injuries, caused by the falling of a brick from a building in process of construction on a public street by nineteen independent contractors employing about two hundred and fifty men, may be presumed to have been the result of negligence, but there is no proof whatever as to who set the brick in motion or from what part of the building it came, the presumption of negligence is not sufficient to sustain a recovery of damages against two of the contractors, one being in charge of the carpenter work and the other of the mason work, since the party responsible for the injury is not identified.

*Wolf* v. *Am. Tract Society*, 25 App. Div. 98, modified.

(Argued May 23, 1900; decided October 2, 1900.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 11, 1898, overruling plaintiff's exceptions to the dismissal of the complaint against the defendant, the American Tract Society, and sustaining plaintiff's exceptions to the dismissal of the complaint against the defendants John Downey, Louis Weber and Edward Weber, which exceptions had been ordered to be heard in the first instance by the Appellate Division, and directing judgment in favor of said defendant, the American Tract Society, and granting a new trial as to defendants John Downey, Louis Weber and Edward Weber.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Herbert C. Smyth* and *Edwin A. Jones* for appellants. The dismissal of the complaint was proper as to the defendant Downey, because he had not been in any way connected with the happening of the accident. (*Kelly* v. *Mayor, etc.,* 11 N. Y. 432; *Pack* v. *Mayor, etc.,* 8 N. Y. 222; *Charlock* v. *Freel,* 125 N. Y. 357; *Vogel* v. *Mayor, etc.,* 92 N. Y. 11; *Murray* v. *Usher,* 117 N. Y. 542; *Burns* v. *Pethcal,* 75 Hun, 437; Smith's Law of Master & Servant, 415; *Lane* v. *Cotton,*

12 Mod. 488; *Perkins* v. *Smith*, 1 Wils. 328; *Bennett* v. *Bayes*, 5 H. & N. 391.) The complaint was properly dismissed as to the defendants L. and E. Weber, who were the mason contractors, because no negligence on their part was proven. (*Rupert* v. *B. H. R. R. Co.*, 154 N. Y. 90; *Laidlaw* v. *Sage*, 158 N. Y. 73; *Douglas* v. *R. R. Co.*, 41 App. Div. 615; *White* v. *A. R. Co.*, 35 App. Div. 23; *Gray* v. *M. S. R. Co.*, 39 App. Div. 536; *Wieland* v. *D. & H. C. Co.*, 42 App. Div. 627; *Searles* v. *M. R. Co.*, 101 N. Y. 661; *Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 356; *Wall* v. *Jones*, 18 N. Y. Supp. 674; *Shields* v. *Robins*, 12 Misc. Rep. 332.)

*J. Culbert Palmer* for respondent. The plaintiff being properly upon a public street was free from contributory negligence. (*Dohn* v. *Dawson*, 90 Hun, 271; 157 N. Y. 686.) From the nature of the accident, the presumption of negligence follows, and throws upon those in control of the work the burden of showing the use of due care. (*Mullen* v. *St. John*, 57 N. Y. 571; *Hogan* v. *M. Ry. Co.*, 149 N. Y. 25; *Volkmar* v. *M. R. R. Co.*, 134 N. Y. 421.) If there is any evidence tending to show that any or all of these defendants were in charge of the work then in progress, it was error to dismiss the complaint as to such defendants. (*Clemence* v. *City of Auburn*, 66 N. Y. 338; *Guldseth* v. *Carlin*, 19 App. Div. 589; *Mullen* v. *St. John*, 57 N. Y. 571.) In addition to the liability of the defendants Weber for not taking proper precautions to protect passers-by, they are directly liable for the negligence of one of their employees in letting fall the brick which injured the plaintiff. (*Dohn* v. *Dawson*, 90 Hun, 271; 157 N. Y. 686; *Guldseth* v. *Carlin*, 19 App. Div. 589.) John Downey and the Webers are all liable, jointly and severally, in the absence of an explanation rebutting negligence. (*Slater* v. *Mersereau*, 64 N. Y. 138; *Merritt* v. *Fitzgibbon*, 29 Hun 634.)

O'BRIEN, J. The plaintiff's action for damages resulting from personal injuries was dismissed at the trial, but the court

below on appeal reversed this judgment as to all the defend-
ants other than the Tract Society, and these defendants have
appealed to this court from the judgment of reversal.

The facts established at the trial upon which the complaint
was dismissed, briefly stated, were these : On the 25th of
March, 1895, a large structural steel building, twenty-three
stories in height, was in progress of construction by the
American Tract Society near the corner of Nassau and Spruce
streets in the city of New York. The society owned the
building and had contracted for its erection with various con-
tractors who agreed to do each a special part of the work.
It was shown that there were nineteen independent contractors
employing about two hundred and fifty men in all. These
contracts were made directly with the Tract Society and bound
the contractor in each case to do some particular part of the
work, and in most, if not all of them, the contractor was bound
to use due care and to indemnify the owner of the building
against any loss resulting from injuries to others in the pro-
gress of the work.

The proof tended to show that on the day named the plain-
tiff was in the service of one of the contractors for furnishing
the steam fitting for the building, and was sent there with a
load of pipe upon a truck. The truck was stopped on the
Spruce street side of the building, which is a narrow street.
While the plaintiff was on the truck attending to his duties,
and without any negligence on his part, a brick fell from the
building, which had then reached the ninth story, and struck
him upon the head, inflicting a very serious injury. There
were then in the building, it seems, not only masons and car-
penters engaged in the work, but steam fitters and plumbers
putting in pipes in recesses in the walls, elevator men, electric
light people and various workers doing work around the build-
ing. There was no proof whatever to show from what part
of the building the brick came, or who dropped it or set it in
motion. There was no proof to identify the person in or
about the building as the immediate author of the wrong. Of
all the numerous persons engaged in or about the work the

jury could not have imputed the accident to any one of them more than another. In this state of the proof the trial judge dismissed the complaint. The learned Appellate Division sustained the trial judge so far as affected the Tract Society, the owner of the building; but since it appeared that the defendant Downey had charge of the carpenter work, and the defendants, the two Webers, had charge of the mason work, and that neither of them had shown conclusively that the brick was not set in motion by the act of some of their workmen, it was held that there was a case for the jury to find that some one of them, or all of them together, were chargeable with negligence and so responsible to the plaintiff for the injury.

We agree with the court below that this is a case where the maxim *res ipsa loquitur* applies. There is a presumption that the plaintiff's injury was the result of negligence. (*Mullen* v. *St. John*, 57 N. Y. 567; *Hogan* v. *Manhattan R. Co.*, 149 N. Y. 23; *Kearney* v. *London, etc., Ry. Co.*, L. R. [5 Q. B.] 411; *Volkmar* v. *Manhattan R. Co.*, 134 N. Y. 418.) But that presumption did not complete the proof which it was incumbent upon the plaintiff to make before the case could be submitted to the jury. In a case like this, where the building in process of construction is in charge of numerous contractors and their workmen, each independent of the other, and none of them subject to the control or direction of the other, some proof must be given to enable the jury to point out or identify the author of the wrong. There is no principle that I am aware of that would make all of the contractors, or all the workmen engaged in erecting this building, liable *in solido*. And yet there is just as much reason for that as there is for holding two of these contractors for no other reason than that one of them had charge of the carpenter work and the other of the mason work. The plaintiff, we must assume, suffered injury from the negligence of some one; but I am not aware of any ground, in reason or law, for imputing the wrong to the two contractors who are defendants, or for selecting them from all the others as responsible to the plaintiff, unless they can conclusively show that they

are not.    When there is no proof where the brick came from, except that it came from the building, and nothing to identify the person who set it in motion, it cannot be said that the plaintiff has made out a case for the jury.    The presumption does not go far enough, since the party chargeable with the act from which the injury resulted has not been identified, but that important fact is left entirely to conjecture.    There is no principle of law that will permit the plaintiff to proceed upon the theory that any one in any way connected with the work, or any one or more of them that he chooses to select, must respond to him in damages for the injury.    If the plaintiff was unable to give proof pointing to the party responsible for the injury, that is no reason why the innocent and the guilty should be held in a body upon a presumption that some or all were negligent.

Each of the nineteen contractors was responsible only for the negligence of his own servants or employees.    He was not responsible for the negligence of the servants of the other contractors.    The men employed in and about the building in the aggregate were the servants of nineteen different masters. As the person who caused the injury was not identified by the proof, it was of course impossible to identify the master responsible for his act.    It follows that either the plaintiff's action must fail for want of proof, or we must hold, as the court below did, that any or all the contractors together may be held responsible for the injury.    I am quite sure that such a proposition cannot be defended upon principle, and I am not aware of any authority that can possibly lend any support to it.

Cases must occasionally happen where the person really responsible for a personal injury cannot be identified or pointed out by proof, as in this case, and then it is far better and more consistent with reason and law that the injury should go without redress than that innocent persons should be held responsible upon some strained construction of the law developed for the occasion.    The idea suggested in this case, that all or any of the nineteen contractors may be held

since the plaintiff is unable by proof to identify the real author of the wrong, is born of necessity, but embodies a principle so far-reaching and dangerous that it cannot receive the sanction of the courts.

The liability of the owner to the plaintiff upon the facts presented by the record in this case is not a practical question upon this appeal, since the plaintiff has not appealed from that part of the order of the court below which discharged the Tract Society from liability absolutely, and the plaintiff cannot maintain this action upon the promise or covenant of the contractors with the owner for the reason that he was not a party to that contract and it was not made for his benefit. (*Reynolds* v. *Van Beuren*, 155 N. Y. 120.)

The sole question now before us is whether there was any case made out against the two contractors who were originally joined as defendants with the owner of the building, and we are of opinion that there was not.

The order appealed from should be reversed as to them, and that of the trial court affirmed, with costs.

HAIGHT, J. (dissenting). The plaintiff was injured by a brick falling from a building twenty-three stories in height in process of construction, belonging to the defendant, the American Tract Society. The appellants, Downey, Louis and Edward Weber, with others, were contractors, each agreeing to do a special part of the work. The question presented by the record is as to whether the plaintiff can recover of any of the defendants without showing the particular person who dropped or caused the brick to fall.

It appears to be conceded that if the society was constructing the building itself, through its own servants, the law would presume negligence from the fact that the brick fell, and the society would be liable. It also appears to be well settled that where the owner contracts with an individual to construct a building, the owner surrendering to the contractor the possession, control and management of the property until the building is completed, the contractor and not the owner would

be presumed negligent for acts of this character, and, consequently, liable. But it is contended that because there are many contractors no presumption of negligence arises against any one, and, consequently, there is no liability unless the plaintiff can show who the particular individual was who dropped the brick.

Injuries of this character are not uncommon, but it is seldom that the injured party is able to show who the negligent person was, and if the principle contended for is to be sustained in its entirety, without limitation, the public has little protection from the dangers liable to occur from the construction of high buildings upon the lines of streets in our large and populous cities. A person, walking along a street who is suddenly crushed to the earth by a brick falling from a high building filled with workmen, has but slight opportunity to ascertain who the person was who caused the brick to fall, and such person seldom confesses to his misconduct. It was owing to this difficulty that the rule of presumption of negligence to which we have alluded was established. It was a rule founded upon necessity designed for the protection of the public, and, in my judgment, should not be abrogated because the owner sees fit to contract with two or more persons to construct his building.

While the liability of the owner is not now before us, it becomes important to understand the nature of his duties in order to determine whether the contractors are liable. The owner, if constructing the building himself, is liable for the negligent acts of his servants. He is also liable for a failure to discharge a duty which he owes to the public. In constructing high buildings, objects are liable to fall. A sudden gust of wind, or a slight accident may be sufficient to set in motion a stone, a brick, a board or an iron tool which might cause the death of a person passing along the sidewalk below. The owner is, therefore, charged with the duty of active vigilance to see that no harm is done to others. The nature and the amount of his vigilance depend largely upon the character and the extent of the dangers that he is required to guard

against. In some instances he may be required to give notice of the danger by signs or barricades, and in others he may be required to erect covers over the sidewalks sufficiently strong to protect the people passing thereon from falling objects. When he has contracted to have the building constructed for him, ordinarily all of these duties devolve upon the contractor, but there are exceptions to this rule. A municipality charged with a duty by the statute of keeping its streets in a safe condition for travel cannot relieve itself from liability for damages occasioned by a person driving into an unguarded pit in the night time by contracting with an individual to construct a sewer or repave a street. (*Storrs* v. *City of Utica*, 17 N. Y. 104; *Brusso* v. *City of Buffalo*, 90 N. Y. 679; *Vogel* v. *Mayor, etc.*, 92 N. Y. 10.) Another exception includes contracts that are unlawful or which provide for acts which, when performed, will create a nuisance, and still another is where the thing contracted to be done is necessarily attended with danger or is intrinsically dangerous. ANDREWS, Ch. J., in delivering the opinion of the court in the case of *Engel* v. *Eureka Club* (137 N. Y. 100, 104), after stating the rule as to the liability of contractors, says: "There are well-understood exceptions to this rule of exemption. Cases of statutory duty imposed upon individuals or corporations; of contracts which are unlawful, or which provide for the doing of acts which, when performed, will create a nuisance, are exceptions. In cases of the first-mentioned class the power and duty imposed cannot be delegated so as to exempt the person who accepts the duty imposed from responsibility, and in those of the second class exemption from liability would be manifestly contrary to public policy, since it would shield the one who directed the commission of the wrong. (*Storrs* v. *City of Utica*, 17 N. Y. 104; *Lowell* v. *B. & L. R. R. Co.*, 23 Pick. 24; *Hole* v. *S. & S. Ry. Co.*, 6 H. & N. 488; *Butler* v. *Hunter*, 7 id. 826.) There are cases of still another class where the thing contracted to be done is necessarily attended with danger, however skillfully and carefully performed, or, in the lan-

guage of Judge DILLON, is 'intrinsically dangerous,' in which case it is held that the party who lets the contract to do the act cannot thereby escape from responsibility for any injury resulting from its execution, although the act to be performed may be lawful. (2 Dillon on Mun. Corp. § 1029, and cases cited.) But if the act to be done may be safely done in the exercise of due care, although in the absence of such care injurious consequences to third persons would be likely to result, then the contractor alone is liable, provided it was his duty under the contract to exercise such care. (*McCafferty* v. *S. D. & P. M. R. R. Co.*, 61 N. Y. 178; *Conners* v. *Hennessey*, 112 Mass. 96; *Butler* v. *Hunter*, *supra.*)" (See, also, *King* v. *N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 181; *Burmeister* v. *N. Y. El. R. R. Co.*, 15 J. & S. 264; *O'Rourke* v. *Hart*, 7 Bosworth, 511; *Vanderpool* v. *Husson*, 28 Barbour, 196; *Gardner* v. *Bennett*, 6 J. & S. 197; *King* v. *Livermore*, 9 Hun, 298; affd., 71 N. Y. 605; *Dohn* v. *Dawson*, 84 Hun, 110.)

It will be observed from an examination of the above cases that it is not every contract that relieves the owner from liability, or the duty of watching and protecting the public. He may contract to have a door constructed, a room plastered, or a chimney built, and still not part with the possession of the building or with his right to control and manage the same while it is in process of construction. But in contracts in which the intent of the parties appears either in express terms or by necessary implication that the duties of the owner should be performed by the contractor, he, and not the owner, is liable.

Was the duty of the owner in this case transferred to the contractor Downey? The contract between them is in the form of letters consisting of a written offer by Downey and an acceptance by the American Tract Society. Downey's offer, so far as is material to the question under consideration, is as follows: " We submit to you a proposition to construct the proposed new building for the American Tract Society, we beg leave to state that we would agree to take entire charge of all the work necessitated by the removal of the old

buildings from the premises, make all excavations, take charge of and be responsible for the protection of the adjoining property and to erect a building, complete, in strict accordance with the architect's plans.    *    *    *    To make all contracts for the various departments of work required, subject to your confirmation ; to superintend the work in each and every department and to take all possible precautions for the avoidance of extra charges of said contracts and to obtain the best possible competition in the various departments at the lowest possible cost to the owners; to furnish inspectors of unquestionable ability and honesty, whose duty it shall be, in conjunction with our personal superintendence, to see that the contracts entered into are honestly and faithfully kept, and to protect the owners against all imposition by avoiding in every case the use of materials of a proprietary character on which it would be impossible to get proper competition, only using such materials when we could purchase the same at prices proportionate with their actual value.    We will be responsible for all loss or damage from accidents during the construction of the building, should such occur, and we will take all proper precautions for the avoidance of such accidents.    We will do the carpentry, cabinet work and all work in this department." It will be observed that Downey in express terms undertakes to remove the old building, make excavations for the new, protect the adjoining property and erect a new building complete. It is true that he subsequently proposes to make contracts with others for the various departments of the work, subject to the confirmation of the owner, with the exception of the carpentry and cabinet work and the work in that department. But he also agrees to furnish inspectors of unquestionable ability and honesty, whose duty it should be, in conjunction with his personal superintendence, to see that the contracts are honestly and faithfully kept. He also expressly agrees that he will be responsible for all loss or damage from accidents during the construction of the building, should such occur. It is possible that this clause, standing alone, would be construed as an indemnity to the owner

and not as creating a liability to injured persons under the authority of *French* v. *Vix* (143 N. Y. 90); but the clause of the contract which follows seems to establish beyond question the clear purpose and intent of the contracting parties. By it Downey agrees to "take all proper precautions for the avoidance of such accidents." By this clause he assumes all of the duties which devolved upon the owner to the public of watching, guarding, giving warning of danger, of barricading or covering the sidewalk, or of doing whatever else would be deemed proper precautions on the part of the owner for the avoidance of accidents. It thus appears to me that he stepped into the shoes of the owner, assumed his duty and liability, and that under the evidence presented by the record it became a question of fact as to whether he had fully discharged these duties to the public. (*Clare* v. *National City Bank*, 8 J. & S. 104; *S. C.*, 1 Sweeny, 539; *Potter* v. *Seymour*, 4 Bosworth, 140.)

Are the defendants Weber liable? Downey had entered into a contract with them, which had been approved by the owner, to do the mason work, plastering, etc., which included the brick work. This work they agreed to do according to the directions of the architect and Downey. They agreed to save Downey and the owner from all liability or claim by reason of any accident, loss or damage to life, limb or property that may occur. They, however, did not agree to take proper precautions for the avoidance of accidents, so that they did not assume to perform the duties of the owner or the duties assumed by Downey in this respect. They, however, did, as contractors, owe a duty to the public, which, if they neglected to perform, would render them liable for the damages resulting from such neglect. The brick work had already been laid up for eleven stories. It was their duty to guard and protect the loose bricks so that they could not fall and injure people passing upon the street. Did they do this? The bricks were under their control and management. One fell and caused the injury complained of. It appears to me that this fact raised a presumption of negligence against the

Webers, which cast the burden upon them of showing that they were free from fault, and that the evidence in this case upon that subject should have been submitted to the jury. (*Mullen* v. *St. John*, 57 N. Y. 567; *Hogan* v. *Manhattan R. Co.*, 149 N. Y. 23; *Volkmar* v. *Manhattan R. Co.*, 134 N. Y. 418; *Dohn* v. *Dawson*, 90 Hun, 271; affirmed, 157 N. Y. 686; *Jager* v. *Adams*, 123 Mass. 26; *Eccles* v. *Darragh*, 16 J. & S. 528.)

The order of the Appellate Division should be affirmed and judgment absolute ordered against the appellants, Downey and the Webers, under their stipulations.

PARKER, Ch. J., GRAY, MARTIN, LANDON and WERNER, JJ., concur with O'BRIEN, J.; HAIGHT, J., dissents.

Order reversed, etc.