HASTORF v. HUDSON RIVER STONE SUPPLY CO. et al.

(District Court, S. D. New York. June 15, 1901.)

1. NEGLIGENCE—BURDEN OF PROOF.

Where elevated bins holding crushed stone gave way, precipitating the stone, etc., into the water, and damaging a scow moored beneath them for the purpose of loading stone thereon, the burden was on the owner of the bins to show freedom from negligence.

2. SAME—EVIDENCE—SUFFICIENCY.

Elevated bins loaded with crushed stone gave way, precipitating the stone into the water. and damaging a scow moored beneath for the purpose of being loaded with stone. The bins were not overloaded at the time, and had been frequently examined without finding defects. They were erected by a competent engineer. Two witnesses testified that they told the man in charge of the scow to move it 20 minutes before the accident occurred. *Held* insufficient evidence to show negligence on the part of the defendants, but negligence by the scowman, the libelant's employé.

In Admiralty.

Louis B. Adams, for libelant.

Kellogg & Rose, for the Metropolitan Crushed Stone Co.

Edward E. Haskell, for the Hudson River Stone Supply Co.

BROWN, District Judge. The above libel was filed to recover a certain balance of charter hire, and the damages sustained by the libelant's scow Alexandria on May 26, 1900, at Eddyville on Rondout creek, while the scow was under charter to the respondent, the Hudson River Stone Supply Company, and while lying at the bulkhead under some elevated bins for holding crushed stone, belonging to the Metropolitan Crushed Stone Company. The latter company has been brought into the action as defendant by petition under the fifty-ninth rule. The bins were 35 feet long and 30 or 40 feet deep and supported by trestle work and a foundation built upon a somewhat sloping stone foundation running out under the water. Between half past 6 and 7 o'clock a. m., of May 26th, the structure gave way and went over into the water, the bins falling upon the libelant's scow.

The bins had been built by a previous company upon foundations which were in part new, but in which to some extent, as I understand, some old crib work was used. It was built under the superintendence and direction of a competent engineer, it was but recently completed, and the property had been sold only a short time before the accident to the Metropolitan Crushed Stone Company. From that company the Hudson Supply Company purchased a boat load of crushed stone and chartered the libelant's boat to go and get it. The scow was about two-thirds loaded at the time of the accident.

I cannot find upon the evidence sufficient proof to sustain the charge of negligence or want of care or prudence (Flynn v. Railroad Co., 142 N. Y. 439, 37 N. E. 514) against either of the defendants. The supply company had no knowledge about the bins and was under no responsibility for them. The burden of proof rested on the crushed stone company, under the circumstances proved, to show itself free from negligence or fault. Warn v. Oil Co. (D. C.) 61 Fed.

631; Wolf v. Society, 164 N. Y. 30, 58 N. E. 31; Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662. I think it has done so.

The bins had been built according to the judgment and direction of a competent and skilled engineer. The company purchased the property after further examination, without any knowledge or suspicion of any defect or weakness or improper construction, if there was any. The bins were not overloaded. During the period immediately preceding the accident, the bins and the supports were frequently and carefully examined for the purpose of seeing whether there was any evidence of defect and none was found. But on the morning of the accident, from 20 minutes to half an hour before it occurred, the engineer of the supply company in the course of his usual examination observed evidence of giving way and cracking. He was alarmed, and went to the libelant's boat and called out to the scowman in charge that he should "get out of there with his boat," as the bins were falling or giving way. The scowman he says, answered "All right." The latter denies this conversation; but Wood, another witness also testifies to giving him similar warning, and two days afterwards in a conversation with the scowman the latter stated to a third witness that he had been aroused from sleep by some one calling to him. The scowman was only partly dressed when the accident occurred; but that he had been notified some considerable time before, is proved by the fact that after he was first notified the engineer rowed across the creek to notify the superintendent on the other side, and was returning when the accident happened; and that prior to the accident the scowman was seen to come out on deck, look about, and then go back again. Upon this proof, I think that there is not only failure to fix any negligence or want of care upon either of the defendants, but that the evidence of neglect on the part of the scowman after due notice, is such as to charge him with the responsibility. It was a very simple matter to remove the scow from danger. There was a strong current, and by simply casting loose the mooring line running up stream, the scow would in a few moments have swung down stream and have been out of reach of harm.

The scowman being employed by the libelant and furnished by him along with the scow, the libelant is chargeable with the neglect of his employé, and is consequently precluded from recovery. See Quinn v. Construction Co. (C. C.) 46 Fed. 506.

As respects the claim for damages the libel is dismissed, but under the circumstances without costs; and a decree for the libelant ordered for $60.42, the amount admitted to be due for charter hire, without costs.