**ALLEN et al. v. REPUBLIC BLDG. CO. et al.**

No. 11637.

Court of Civil Appeals of Texas. Dallas.

May 11, 1935.

Church, Read & Bane, of Dallas, for appellants.

McCormick, Bromberg, Leftwich & Carrington, Thompson, Knight, Baker & Harris, and Pinkney Grissom, all of Dallas, for appellees.

LOONEY, Justice.

This is a statutory action by Mrs. Bert Allen, surviving wife of Bert Allen, and Mrs. William Eagan, his mother, against the Republic Building Company, owner, Inge Construction Company, general contractor, and E. R. Haines, independent brick contractor, to recover damages growing out of the death of Bert Allen.

Plaintiffs alleged that: The Republic Building Company, as owner, had under construction the 22-story Republic Bank building; that the Inge Construction Company, as agent of the owner, had charge of the construction; that E. R. Haines, subcontractor, had the brick and masonry contract; that Bert Allen, deceased, an employee of the Federal Glass & Paint Company, subcontractor for the glazing work, lost his life in the course of his employment while at work on the west side of the building. It was alleged that the Republic

Building Company and the Inge Construction Company were guilty of negligence in the following respects: That they failed to furnish deceased a reasonably safe place in which to work; that they negligently permitted E. R. Haines, brick contractor, to use a scaffold, so constructed and employed as to permit materials, tools, and other objects to fall therefrom, endangering the lives of workmen on the building; that E. R. Haines was negligent, in that the scaffold, on which his employees (brick masons) were working, at the time near the nineteenth floor of the building, was so constructed and maintained as to permit the falling therefrom of bricks and other objects, and that said defendant and employees did, in fact, permit and cause a brick, or some other object, to fall from the scaffold, striking and injuring deceased, causing him to fall through the skylight opening, resulting in his death.

The Ocean Accident & Guarantee Corporation, Limited, intervened, and alleged that it carried compensation insurance for the Federal Glass & Paint Company, subcontractor for glazing work on the building, by whom deceased was employed, and that it had paid his surviving wife compensation, as required by statute, amounting to $6,413.04, hence by virtue of the statute was entitled to recover its outlay.

The Republic Building Company and Inge Construction Company answered by a general denial; charged deceased with contributory negligence in several respects; also pleaded that, with full knowledge of the situation and the conditions under which he was working, deceased assumed the risk of being injured; that the Inge Construction Company was an independent contractor; and that various independent contractors were engaged in carrying on different parts of the work of constructing the building, including E. R. Haines, independent contractor for the brick and masonry work, hence that neither the Republic Building Company nor Inge Construction Company was responsible for the negligence of any independent contractor.

Defendant Haines answered by a general denial, charged deceased with contributory negligence in several respects, alleged that with full knowledge of the situation he assumed the risks incident to the performance of his work, and, further, that he became dizzy, or from some other cause lost his balance, and fell through the sky-

508

light opening to the concrete floor below and was killed.

When plaintiffs closed, the court directed a verdict for all defendants, judgment was rendered accordingly, from which plaintiffs appealed.

The assignments urged by plaintiffs, challenging, as they do, the correctness of the action of the court in directing the verdict for defendants, necessarily require consideration, on our part, of the entire evidence in order to determine whether or not the case should have been submitted to the jury.

In general outline, the case on the facts may be stated as follows: The Republic Building Company, owner, let a general contract to Inge Construction Company for the construction, according to certain plans and specifications, of the 22-story Republic Bank building in Dallas on a cost-plus basis; the latter company let seven or eight subcontracts to independent contractors for portions of the work, including one to E. R. Haines for the brick and masonry, and one to the Federal Glass & Paint Company, for the glazing, by whom deceased was employed and for whom he was working at the time of the accident. On the day of the accident, approximately 130 workmen were engaged at various tasks throughout the building, including deceased, who it seems was doing glazing work on a window that opened from the fourth floor to the roof of an offset over the third floor; also including employees of Haines, who at the time were laying brick on the west wall between the eighteenth and nineteenth floors, from a scaffold suspended by cables about 150 feet above the place where deceased was at work. An opening for a skylight to the third floor was in the roof over the offset, from 9 to 11 feet long, north and south parallel with the west wall of the building, and about 5 feet wide, and at the time was uncovered. The west edge of this opening was about 15 inches from the west wall of the building, had simply a concrete curb about 6 inches wide and 7 inches high around its edge, thus leaving about 9 inches of clearance between the curb and wall. At this place, there are two windows in the west wall; the north one, or at least the south half of the north window, is immediately over the north end of the skylight opening, and separated from it by the narrow space between the curb and wall.

The only eyewitness to the accident was a negro boy in the service of the plumbing contractor, who about ten minutes before the accident saw deceased on the fourth floor moving his glazer's chair or bench from one to another of the windows opening to the roof over the offset; saw deceased falling through the skylight opening; was directly under the skylight and came near being struck; first heard a noise, looking up saw deceased falling "kinda angling" on his side, fell on his back and side, groaned when he struck the concrete, had some blood on the back of his head, and more blood on his face; nothing fell with deceased except his hat, glasses, and a putty knife; did not see any brick or mortar falling.

The real cause of the fall and death of deceased is unknown; no one knows precisely what he had been doing for at least ten minutes before the accident; no one saw him until he was falling through the skylight; no one knows whether he was hit by something and caused to fall, or, whether he fell as a result of negligence on his part, or as the result of an unavoidable accident. So it seems that if liability is established against either defendant it will have to be based upon a mere presumption as to the real cause of the accident.

Plaintiffs contend that the Inge Construction Company was not an independent contractor, but the agent of the Republic Building Company, and that each owed deceased the legal duty of providing him a reasonably safe place to work, and that under the facts and circumstances it was the province of the jury, and not that of the court, to determine whether or not there existed actionable negligence.

In determining whether a person employed to do certain work is an independent contractor, or a mere agent of the employer, the extent of control over the work reserved by the employer is largely determinative; also where the person employed sublets portions of the work to other contractors, as in the instant case, the latter's independence should be determined by the same criterion. 14 R. C. L. p. 67, § 3.

The facts in regard to this issue are these: The contract between the Republic Building Company and Inge Construction Company was verbal; the latter had absolute charge and supervision of the construction according to plans and specifications, and was to be compensated on a cost-plus basis, that is, was to be paid an amount produced by calculating the agreed percentage on the total cost of the building.

■ In this situation, was Inge Construction Company an independent contractor? We think so. In McCrary Engineering Co. v. White Coal Power Co., 35 F.(2d) 142, the Circuit Court of Appeals (4th Circuit), having under consideration a similar contract, held that the payment of the cost of construction, plus a certain percentage as a fee to the contractor, was not inconsistent with the relation of independent contractor and owner; that the contract must be considered as a whole, and the intention of the parties determined from the language of the entire instrument. So we conclude that the fact that Inge Construction Company was compensated on a cost-plus basis is not of itself decisive of the question, but we think its independence as contractor is clearly shown by the absolute and exclusive control given it over the construction of the building.

The prevalent doctrine in this state is announced in 23 Tex. Jur. § 15, pp. 558–560, as follows: "The basic rule of this subject is that an employer is not responsible for the acts or omissions of an independent contractor, his subcontractors or servants, committed in the prosecution of work that is not in itself unlawful or attended with danger to others. The employer having no duties, he is not liable because the contractor may have violated the obligations resting upon him. The doctrine of respondeat superior has no application. To hold otherwise, say the Supreme Court, would virtually forbid parties to construct works of improvement or perform many other acts, except by their own servants, unless at great peril of liability for actions of others over whom they have no immediate control. Accordingly, an instructed verdict in behalf of the employer is properly ordered where the undisputed facts call for an application of this general rule."

■ This question presents itself: Is the work of laying brick and constructing a brick building an essentially dangerous undertaking, within the meaning of the doctrine just quoted? We do not think so. A trade or work so ancient in origin, and universal in practice, cannot, in our opinion, be classed as intrinsically dangerous. Neither the Republic Building Company nor Inge Construction Company retained any supervisory control over the brickwork, hence if a brick or other object fell from the scaffold and injured deceased, as alleged, it resulted from methods adopted for the performance of the work by Mr. Haines, admittedly an independent contrac-

tor, for whose negligence, if any, neither the owner nor Inge Construction Company was liable. See Smith v. Humphreyville, 47 Tex. Civ. App. 140, 104 S. W. 495; Wolf v. American, etc., Co., 164 N. Y. 30, 58 N. E. 31, 51 L. R. A. 241; Weilbacher v. J. W. Putts Co., 123 Md. 249, 91 A. 343, Ann. Cas. 1916C, 115; Wilson v. Crutcher (Tex. Civ. App.) 176 S. W. 625; Rinker v. Galveston-Houston Electric R. Co. (Tex. Civ. App.) 176 S. W. 737; Dixon v. Robinson (Tex. Civ. App.) 276 S. W. 770; Evans v. Bryant (Tex. Civ. App.) 29 S.W. (2d) 484.

So we conclude that the relation of master and servant did not exist between deceased and either the Republic Building Company or Inge Construction Company, and that neither owed deceased any duty as such. In 39 C. J. pp. 37, 38, the doctrine is announced that: "An independent contractor is not a servant of his employer. The relation of master and servant does not exist between an employer and the servants of an independent contractor, nor between an independent contractor and the servants of a subcontractor, and he is not responsible as master, either to or for them. * * *"

But even if the relation of master and servant did exist between deceased and the owner and general contractor, yet the rule requiring the master to furnish the servant a reasonably safe place to work would not apply, for the reason that deceased, with many other employees of subcontractors, was engaged at the time in the work of erecting a large building under conditions that shifted and changed from day to day. The applicable rule in such a situation is stated in 39 C. J. p. 351, § 470, as follows: "The obligation of a master to provide reasonably safe places and structures for his servant to work upon does not extend to buildings in process of construction, or of demolition or dismantling, where the successive temporary conditions through which such structures must pass in such operations must from the very nature thereof be dangerous." Also see Armour & Co. v. Dumas, 43 Tex. Civ. App. 36, 95 S. W. 710; Lowrey v. Fitzhugh (Tex. Civ. App.) 153 S. W. 1190, 1191; Montgomery v. Houston Textile Mills (Tex. Com. App.) 45 S.W.(2d) 140; Armour v. Hahn, 111 U. S. 313, 4 S. Ct. 433, 28 L. Ed. 440.

■ So we conclude that the court did not err in directing a verdict for the Re-

**510**

public Building Company and Inge Construction Company.

As heretofore stated, plaintiffs alleged that E. R. Haines, the brick and masonry contractor, was negligent in using a scaffold, upon which his employees were at the time working, that was so imperfectly constructed and improperly swung as to permit bricks and other objects to fall therefrom, and that, in fact, a brick or some other object did fall from the scaffold, struck deceased, and caused his death.

■■■. It may be conceded, we think correctly, that the evidence on this issue, although conflicting, tended to show that Haines was guilty of the negligence alleged, but the case halted at that point, as no causal connection between the alleged negligence of Haines and the injury to and death of deceased was shown, hence the evidence fell far short of raising an issue of actionable negligence. We do not think a causal connection can be presumed, either from the negligence of Haines in the respect mentioned, or from the fact that deceased fell through the skylight opening and died as the result of injuries received. Under the authorities, this hiatus in the evidence cannot be bridged by presumption. In a similar situation, presented in Houston, etc., Ry. Co. v. McHowell (Tex. Civ. App.) 278 S. W. 258, 261, the Beaumont court said: "In cases of this character, the burden of proof is upon the plaintiff, not only to establish the negligence as pleaded, but also the burden is upon the plaintiff to establish causal connection between that negligence and the injury or death. Causal connection can no more be presumed than the negligence itself. Neither can rest upon mere presumption, but both must be proved. Now the jury has found upon sufficient evidence as we hold, that appellant was guilty of negligence in permitting the ballasting material to be in the path between the main line and the passing track, as it was, and that deceased was not guilty of contributory negligence, and that he was performing the duties of his employment at the time of his death, and these findings we would not disturb, but we cannot permit this judgment to stand. upon mere conjecture, surmise, or speculation as to what caused the deceased to fall upon appellant's track, if he did, and be killed." Also see Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059;

T. & P. Ry. Co. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049; Missouri Pacific Ry. Co. v. Porter, 73 Tex. 304, 11 S. W. 324; M., K. & T. Ry. Co. v. Greenwood, 40 Tex. Civ. App. 252, 89 S. W. 810; Wolf v. American, etc., Co., 164 N. Y. 30, 58 N. E. 31, 51 L. R. A. 241.

The doctrine of res ipsa loquitur is not discussed, because, in our opinion, its application is not invoked by the facts. But even if it could be said that the facts and circumstances justify the deduction that deceased was struck and injured by a brick or some object that fell from the suspended scaffold, causing his death, or causing him to fall through the opening, thus producing death, still we think, with equal plausibility, the facts and circumstances would justify the deduction that deceased fell and was injured, either as the result of his own negligence, or as the result of an unavoidable accident.

The evidence bearing upon this matter is, in substance, as follows: Mr. H. P. Inge, of Inge Construction Company, testified that, about 30 minutes after the body of deceased was removed from the building, he made an independent investigation to determine the cause of the death of Mr. Allen, but was unable to do so; that he talked to men on the job, looked over the place where deceased was supposed to have been working, but could find no one who knew how the accident happened. He testified that Mr. Allen had been doing glazing work on the job about 30 days prior to his death; that in constructing such a building it was necessary for workmen, in all the trades, to work along together as the construction progressed; that Allen's glazing scaffold was found in a window on the west side of the building, just above the skylight opening in the roof over the third floor. Describing the roof over the third floor, where Allen was supposed to have been working, witness testified to the location of the opening with reference to the wall and windows, and gave the distances as shown elsewhere in the record; he also testified that some of Allen's tools were found on his glazer's scaffold or bench, and some were on the floor; that the roof around the skylight and third floor underneath the opening contained the usual accumulation of stuff from the work of the different crafts; and testified further to the conditions under which deceas-

ed had to work, indicative of a probability that 'he fell from the roof through the opening.

Mr. Clark, adjuster for the Ocean Accident & Guarantee Company, testified that about one and a half or two hours after the accident he made an investigation to determine the probable activities of deceased just prior to his death. The testimony of this witness is to the effect that the north window on the fourth floor, immediately above the skylight, had fresh putty on it—on the lower sash; that the space between the west wall of the building and the ledge around the skylight opening was from 9 to 12 inches; that it was about 12 inches from the top of the skylight curbing to the bottom of the window; that it was about 20 inches from the south side of the north window to the corner of the curb at the north end of the skylight opening; that when he arrived the platform (glazer's chair) was in the window, sticking out, but did not extend over the skylight opening; that the skylight extends from about the middle of the north window, so, if deceased was working on the window at all, or on either window, he would have had to stand on the roof at the edge of the skylight opening, and if going back and forth between the windows would have gone along the edge of the skylight; that when witness arrived at the scene of the accident the north window glass was down, and if deceased had been working on that window, he must have been on the outside (on the roof), and, if so, he must have been close to the edge of the opening, and if working there, standing on the roof, or on the ledge of the skylight, and made a misstep, he would have fallen through the opening, and this may have happened; and if deceased was working on the window, not sitting or standing on the scaffold, he would have had to lean out across the skylight opening. Witness testified further that the putty had been cut on the upper glass in the window, but not down the south side or bottom of the glass, and if deceased had been sitting on the window on his bench or scaffold, and something had fallen from above, it is not likely that it would have struck him; that deceased may have been standing with one foot on the edge of the skylight, and if cutting putty on the lower sash would have had to stoop over the skylight; that the opening was in plain view, nothing to prevent any one· from

seeing it; that in any position deceased may have been working he would have had to lean out over across some portion of the opening, and his proximity to it would have been a matter of inches, if working around either of these windows.

O. M. Taylor, stepson of deceased, inspected the premises the day after the accident, and testified, in substance, that no putty work had been done on the south window; that the putty on the upper sash of the north window had not been touched; that it had been cut at the top of the lower sash and partially down the side of this sash, some six or eight inches. The "Q. and A." report of the testimony of this witness leaves it somewhat in confusion at this point, but, aside from this, the witness makes it plain that the only puttywork found was on the north window.

We think the circumstances show that deceased fell towards the south, face forward through the opening; his body was found beneath with his head towards the south, indicating that his position on the roof, when he fell, was at or near the north end of the skylight opening, or upon the ledge or narrow space between the opening and the west wall. This thought is in harmony with circumstances indicating that deceased had recently been at work on the lower sash of the north window. Some of his tools were found in the glazer's chair, which indicates that he was not sitting in or working from the chair when he fell, but was standing on the roof adjacent to the opening. A picture (Exhibit C, part of the record) taken from a window on the fifth floor a few hours after the accident shows the location of the skylight opening and windows with reference to each other. It will be noted therefrom that the space between the skylight opening and the wall under the windows is limited, not admitting of much freedom of action, and besides, the same is shown to have been littered with an accumulation of loose material, including pieces of lumber, over which, while working at this place, deceased could have stumbled and fallen forward against the ledge and through the opening, and, in such an event, we do not think it at all unreasonable to presume that in this way he received the injuries resulting in his death. No one testified that a brick or other object fell from the scaffold, nor was there any evidence that deceased received any in-

jury to the crown of his head; the wounds seem to have been to his face and back of his head. While it may be true that these injuries could have been inflicted by an object falling from the scaffold, yet we think they could also have been received in a fall against the side of and through the opening to the concrete floor below. The evidence, in our opinion, indicates that the accident may have happened from either one of three causes; that is: (1) Deceased may have been struck by some object falling from the scaffold above, and caused to fall through the skylight opening; or (2) the fall and consequent injuries could have resulted from deceased's own negligence; or (3) from an unavoidable accident. Nor do we think it more reasonable or probable that the accident was caused by the falling of a brick or other object from the scaffold than that it resulted from either one of the other two probable causes suggested by the evidence.

In similar situations recovery has been repeatedly denied. In A., T. & S. F. Ry. Co. v. Toops, 281 U. S. 351, 50 S. Ct. 281, 282, 74 L. Ed. 896, the Supreme Court of the United States used the following language in point: "The negligence complained of must be the cause of the injury. The jury may not be permitted to speculate as to its cause, and the case must be withdrawn from its consideration, unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer." In A., T. & S. F. Ry. Co. v. Saxon, 284 U. S. 458, 52 S. Ct. 229, 230, 76 L. Ed. 397, the same court used the following language: "Nobody saw the accident; no one can say with fair certainty how it occurred. Consistently with the facts disclosed, it might have happened in one of several ways and without causal negligence by the petitioner [railway]." In T. & N. O. Ry. Co. v. Warden, 78 S.W.(2d) 164, 166, our Commission of Appeals used the following language: "For the purposes of this opinion we will presume that the car left on the converging end of the south stock track adjoining the north stock track was left too near the end of the south stock track and too near the side of the north stock track. We will further presume that the leaving of such car in the position indicated was negli-

gence on the part of the railroad company. * * * In the instant case, nobody saw the accident, and it cannot be said with fair certainty how it occurred. It might have happened in one of several ways and without causal negligence on the part of the defendant." To the same effect, see Davis v. Castile (Tex. Com. App.) 257 S. W. 870; M., K. & T. Ry. Co. v. Greenwood, 40 Tex. Civ. App. 252, 89 S. W. 810 (other cases could be cited to the same effect).

So we conclude that the court did not err in instructing a verdict for defendants; therefore affirm the judgment in all respects.

Affirmed.