POTTER et al. v. SOUTHWESTERN ASSOCIATED TELEPHONE CO. et al.

No. 12340.

Court of Civil Appeals of Texas. Galveston.

April 3, 1952.

Lester M. Ricks and J. Edwin Smith, Houston, Allen, Smith, Neal & Lehmann, Houston, of counsel, for appellants Danny R. Potter and others.

Vinson, Elkins & Weems, B. Jeff Crane, Jr., C. M. Hightower, Houston, Leroy L. Anderson, Crosby, for appellee Crosby State Bank.

Fulbright, Crooker, Freeman & Bates, M. S. McCorquodale, William H. Vaughan, Jr., Houston, for appellee Southwestern Associated Tel. Co.

MONTEITH, Chief Justice.

This is an appeal in an action brought by D. G. Potter, in his own behalf and as next friend of his minor son, Danny R. Potter, to recover from appellees, Southwestern Associated Telephone Company and Crosby State Bank, damages alleged to have been sustained as a result of injuries allegedly received by the minor plaintiff, Danny R. Potter when he fell from the second story window of a building owned by appellee Crosby State Bank and leased to appellee Southwestern Associated Telephone Company. Mrs. Audrey Potter, the minor appellant's mother, was employed by appellant Telephone Company to operate its switchboard maintained in the leased premises. The minor appellant, his father and mother, and an older child, had resided in the leased premises for approximately a week prior to the time Danny R. Potter was injured.

At the close of plaintiffs' testimony, upon motion of both appellees the case was withdrawn from the jury and judgment entered by the trial court that plaintiffs take nothing against appellees.

Under the terms of Mrs. Potter's contract of employment, the Telephone Company provided living quarters for the Potter family which provided that the Telephone Company should have free ingress and egress of the premises at all times, and that Mrs. Potter could make no additions to, or alterations in the premises.

The quarters occupied by the Potters and in which the telephone exchange was located were on the second floor of the Crosby State Bank Building owned by the Bank. They were leased to the Telephone Company by the Bank. The lease provided that the premises were to be used as the Telephone office and living quarters for employees and not otherwise. Under the lease the Bank covenanted to keep the premises in good repair and tenantable condition.

The lease to the Telephone Company further provided that:

"(1) The Lessor shall during the term of the lease herein provided for, and during the term of all extensions and renewals thereof, keep said premises in good repair and tenantable condition, and if Lessor fails or refuses to make such repairs, the Lessee shall have the right to make all necessary repairs to keep the premises herein demised in good and tenantable condition, pay the cost thereof and deduct the amount from the monthly rental payments herein provided."

Appellee Southwestern Associated Telephone Company will be referred to in this opinion as Telephone Company, and appellee Crosby State Bank will be referred to as Bank.

At the time of the accident Danny Potter was twenty-six months old. Both Mr. and Mrs. Potter, the father and mother of the minor appellant, testified that they had never seen Danny climb before the accident, and that they had no knowledge or suspicion of the possibility that the child was old enough to appreciate obvious hazards and perils or that he was agile enough to climb into the window. No complaint was made by either of them to the Telephone Company about the condition of the windows in the apartment.

Mrs. Potter testified that she was engaged in answering the buzzer at the switchboard in the office when she was notified by an officer of the Bank that her child had fallen to the pavement outside of the Bank building. The record shows that the sill of the window from which the

minor appellant fell was between 2 feet and 30 inches from the floor.

The Supreme Court passed upon almost the precise question involved in this appeal in the case of Flynn v. Pan American Hotel Co., 143 Tex. 219, 183 S.W.2d 446, 449, in a suit for personal injuries received by plaintiff as a result of the falling of an elevator in the St. Anthony Hotel at San Antonio. The defendant, the owner of the property, had leased the premises to the plaintiff's employer. Under the terms of the lease the lessee agreed that it would not, without the written consent of the lessor, "make any changes or permanent improvements" on the premises or in the building. Lessee agreed to keep and maintain the property in good condition and in good state of repair. Liability was sought to be predicated on a provision of the lease which allowed the defendant, at its option, to make repairs and charge the lessee therefor. The court held that under the terms of the lease it was contemplated and intended that respondent should have the right to enter on the property to make improvements and repairs; but that the reservation by a lessor of a right to enter the premises to make such repairs and alterations as it might elect to make was not a reservation of control over a part of the building and that an obligation on the part of the lessor to make repairs does not arise from the reservation of such right. Citing the case of Stone v. Sullivan, 300 Mass. 450, 15 N.E.2d 476, 116 A. L.R. 1223.

Continuing, the court held that, "The whole of the property, including the 'back elevator,' was leased to the New St. Anthony Hotel Company, to be possessed and operated by it as a hotel, and it was so possessed and operated by that company. The control that respondent exercised of parts of the leased property was, under the evidence, only that occasional and temporary possession and use that were necessary or proper for making the improvements and repairs that it undertook to make."

The trial court instructed a verdict for the defendant and the judgment was affirmed.

As we understand the Flynn case, it holds that the right to make such repairs, additions, alterations, etc. as were deemed necessary in the conduct of the business does not impose any duty upon a lessor to keep the premises in good repair.

In the recent case of Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47, 48, 150 A.L.R. 1369, the Supreme Court declared the rule as to a landlord's duty to make repairs was: "Where there is no agreement by the landlord to repair the demised premises and he is not guilty of any fraud or concealment by failing to disclose hidden defects of which he has knowledge, the tenant takes the risk of their safety and the landlord is not liable to him or to any person entering under his title or by his invitation for injury caused by reason of their unsafe condition." (Citing authorities.)

There is no contention in the instant case by appellants that the Telephone Company or the Bank had any knowledge of the condition of the screen to the window, from which the minor appellant fell, before the accident in question, and there is no evidence in the record to prove that the accident in question could reasonably have been foreseen or anticipated by appellees in the exercise of ordinary care.

Further, there is no evidence in the record to show when the screen was loosened or that the screen was not in sound condition at the time the Potters took over the apartment.

The case of Allen v. Republic Building Co., Tex.Civ.App., 84 S.W.2d 506, was a statutory death action brought against the owner, the general contractor and Haines, an independent brick contractor. Negligence was charged against the first two named defendants for failure to furnish a safe place to work, and against Haines for negligence in using the scaffold so constructed as to permit materials and other objects to fall therefrom. Haines was laying bricks between the 18th and 19th floors while the deceased Allen was working on the 4th floor of the building. The only eye-witness to the accident saw the deceased falling through a skylight opening but did not see anything else falling. The

trial court held that the owner and the general contractor were not liable, for Haines was an independent contractor, and that they were not responsible for his acts, nor were they under the duty to furnish a safe place to work to the deceased. The court, in its opinion, said [84 S.W.2d 510], "It may be conceded, we think correctly, that the evidence on this issue, although conflicting, tended to show that Haines was guilty of the negligence alleged, but the case halted at that point, as no causal connection between the alleged negligence of Haines and the injury to and death of deceased was shown, hence the evidence fell far short of raising an issue of actionable negligence. We do not think a causal connection can be presumed, either from the negligence of Haines in the respect mentioned, or from the fact that deceased fell through the skylight opening and died as the result of injuries received. Under the authorities, this hiatus in the evidence cannot be bridged by presumption. * * *" Continuing, the court said, "* * * The evidence, in our opinion, indicates that the accident may have happened from either one of three causes; that is: (1) Deceased may have been struck by some object falling from the scaffold above, and caused to fall through the skylight opening; or (2) the fall and consequent injuries could have resulted from deceased's own negligence; or (3) from an unavoidable accident. Nor do we think it more reasonable or probable that the accident was caused by the falling of a brick or other object from the scaffold than that it resulted from either one of the other two probable causes suggested by the evidence.

"In similar situations recovery has been repeatedly denied. In Atchison, T. & S. F. Ry. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 282, 74 L.Ed. 896, the Supreme Court of the United States used the following language in point: 'The negligence complained of must be the cause of the injury. The jury may not be permitted to speculate as to its cause, and the case must be withdrawn from its consideration, unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer.' In Atchison, T. & S. F. Ry. Co. v. Saxon, 284 U.S. 458, 52 S.Ct. 229, 230, 76 L.Ed. 397, the same court used the following language: 'Nobody saw the accident; no one can say with fair certainty how it occurred. Consistently with the facts disclosed, it might have happened in one of several ways and without causal negligence by the petitioner (railway).' In Texas & N. O. Ry. Co. v. Warden, [125 Tex. 193] 78 S.W.2d 164, 166, our Commission of Appeals used the following language: 'For the purposes of this opinion we will presume that the car left on the converging end of the south stock track adjoining the north stock track was left too near the end of the south stock track and too near the side of the north stock track. We will further presume that the leaving of such car in the position indicated was negligence on the part of the railroad company. * * * In the instant case, nobody saw the accident, and it cannot be said with fair certainty how it occurred. It might have happened in one of several ways and without causal negligence on the part of the defendant.' To the same effect, see Davis v. Castile (Tex.Com. App.), 257 S.W. 870; Missouri K. & T. Ry. Co. v. Greenwood, 40 Tex.Civ.App. 252, 89 S.W. 810 (other cases could be cited to the same effect)."

The following cases are in accord with the rule above announced: Texas & Pacific Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S.W. 3; Davis v. Castile, Tex. Com.App., 257 S.W. 870, at page 872, which holds: "* * * It being apparent that the injury may have been the result of other causes than the negligence of the railroad company, it was error to leave to the jury the right to conjecture or guess as to the real cause."

In Sterling v. Texas & N. O. R. Co., Tex.Civ.App., 148 S.W.2d 886, 888 (writ dismissed) this Court, speaking through Justice Cody, held: "The negligent operation of the train might indeed have been the proximate cause of the injuries, but there is no proof that this is so, and

'there is no presumption that the negligence proven was the proximate cause of the injury.' "

In the case of Bob's Candy & Pecan Co. v. McConnell, 140 Tex. 331, 167 S.W.2d 511, 514, it was held that, "An inference cannot be based on a mere possibility. It can be based only on a fact proved or on something known to be true. Wright v. Conway, 34 Wyo. 1 [241 P. 369], 242 P. 1107. It cannot be based on a mere surmise or conjecture. Inferences of fact cannot be drawn from uncertain premises. Texas & N. O. R. Co. v. Brannen, Tex. Com.App. [140 Tex. 52], 166 S.W.2d 112 * * *."

The case of Chelefou v. Springfield Institute for Savings, 1937, 297 Mass. 236, 8 N.E.2d 769 is strongly in point with the facts in this appeal. In that case a three year old girl fell through the window of an apartment on the third floor of a building owned by the defendant containing a window screen fastened by one nail on each side. The landlord had agreed to install window screens, thereby assuming the duty of using due care in so doing.

The court sustained a judgment non obstante veredicto for the defendant landlord, holding that [8 N.E.2d 772]: "The evidence did not warrant a finding of a breach, as above defined, of the landlord's duty which caused or contributed to the injuries sustained by the minor plaintiff. A finding was warranted that the screen on the kitchen window was not securely installed. But the premises were not thereby rendered unsafe for the use of the minor plaintiff in any particular which contributed to her injuries (see Withington v. Rome, 258 Mass. 188, 154 N. E. 764), unless by reason of the fact that the screen was not so installed as to prevent her from falling out of the window. It could not have been found, however, that this was a risk of harm which the landlord was bound to foresee and guard against in installing screens under the agreement. The landlord's duty to this plaintiff, though noncontractual, was limited to the purposes of the agreement. * * * (citing authorities) There is nothing in the evidence to indicate that the agreement contemplated that the screens were to be installed for any purpose other than the ordinary purpose of window screens. The case differs in this respect from Shaw v. Butterworth, 327 Mo. 622, 626, 38 S.W.2d 57, 59—decided in favor of a child of the tenant—where, during the rental negotiations, the tenant advised the landlord's agent that she wanted window screens 'so that the children would not fall out.' Doubtless as matter of common knowledge window screens furnish some such protection. But this is not the ordinary purpose of window screens. See Egan v. Krueger, 103 N.J.L., 474, at page 476, 135 A. 811, 812, 58 A. L.R. 1450—a case decided against a child of the tenant—where the court said, 'A screen in a window, obviously and of common knowledge, is not placed there for the purpose of keeping persons from falling out of a window.' The mere failure of the landlord to install the screen in the kitchen window in such a manner as to furnish protection to the minor plaintiff against falling out of the window, in the circumstances shown, could not be found to be such 'active negligence or misfeasance' creating an unsafe condition of the premises as would entitle this plaintiff to recover. Moreover, there was no evidence that the landlord, after the work was done, gave any express assurance to the tenant or to any member of his family that the screen would furnish such protection— whatever would be the effect of such an assurance. * * * And no such assurance, upon which the tenant or any member of his family was entitled to rely, could be implied from the installation of the screen or its appearance."

In the case of Schlemmer, etc., v. Stokes, California 1941, 47 Cal.App.2d 164, 117 P.2d 396, 397, the court assumes that the evidence would support a finding that the defendant was an innkeeper, and that the plaintiffs were her guests. The minor plaintiff leaned against the screen and fell. The court held: "Even if considered as an innkeeper, defendant was not an insurer of the safety of plaintiff, but she owed to him the duty of exercising reasonable care to keep the premises in a safe condition.

The burden was upon plaintiff to establish that defendant was negligent in this regard. (Citing cases.) It is a matter of common knowledge that a screen is not placed in a window for the purpose of keeping persons from falling out. * * *"

█ We have carefully considered all points presented by appellants in their brief and, finding no reversible error in the record, the judgment of the trial court must be in all things affirmed.